William Jurney, Plaintiff-Appellee, v. Joseph Lubeznik, a/k/a Joseph Lubcznick or a/k/a Joseph Lubeznick, Defendant-Appellant.

Gen. No. 50,693.

First District, Second Division.

June 21, 1966.

Howard, French and Healy, of Chicago (Richard G. French, of counsel), for appellant.

Lloyd P. Douglas, of Chicago, for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a judgment entered in favor of plaintiff, after a jury trial, in the amount of $25,000 for injuries received in a fire.

This case was previously tried and a judgment entered in favor of defendant, which was reversed on appeal because of an improper instruction. Jurney v. Lubeznick, 54 Ill App2d 372, 204 NE2d 166 (1964).·

Since approximately 1955 defendant owned and operated the Arcade Hotel located at 1011–1013 West Madison Street in Chicago, Illinois. The clientele of the hotel were people who lived on West Madison Street. The charge to spend the night in one of the sleeping rooms was 80 cents. There were a number of permanent residents who paid $5.25 per week. The first floor of the building contained stores and the second and third floors contained the hotel. There were approximately 70 sleeping rooms or cubicles on the third floor of the building or second floor of the hotel and about 60 cubicles on the second floor or first floor of the hotel. This floor also contained the hotel desk and a lobby which had a television set, tables for checkers or cards and places to sit for the purpose of reading. The cubicles themselves were 6 ft. by 8 ft. The walls of the cubicles did not reach the ceiling, the ceiling being about 12 ft. high and the walls about 7½ ft. high. The cubicles were enclosed at the top with wire. The cubicles were furnished with a cot, a dresser and a chair together with bedding for the cot. Entry was through a wooden door which could be locked by the occupants.

The cubicles were supplied with a light fixture which hung down into the center of the room from a conduit. The fixture had a pull type switch and the socket was fitted with a light bulb of 15 watt capacity because the building was over 50 years old and a larger bulb would blow fuses and perhaps cause a fire. A 15 watt capacity

bulb was felt to be sufficient since the cubicles were basically sleeping rooms. Light shades were not supplied for the lights, because with the doors closed, one could not see into the cubicles from the aisle, and if there was a shade on the light the density of the light coming through the top of the cubicle could not be seen. Thus, a person would be unable to tell if a tenant was using a larger bulb in the socket. There was testimony that the tenants often used paper for shades on these bulbs and had replaced the bulbs with larger ones and that this practice was known to defendant and his employees.

After defendant leased the premises in 1955, he installed an automatic sprinkler system which contained a sprinkler head located over every 9 square feet of both floors of the hotel. These were set by the fire department to go off if the temperature got to 160° Fahrenheit. There was an automatic sprinkler head directly over the cubicle involved here.

Plaintiff had been employed by defendant prior to March 24, 1960, as a night porter. According to the defendant's records the last night he had worked was March 21, 1960. Plaintiff testified that he had worked the night of the 23rd and early morning of the 24th of March, 1960. The duties of a night porter were to mop the lobby, clean the washrooms and patrol the hotel to see that there was no noise and no fires in the building. They were also instructed that if they saw a bulb larger than 15 watts in any cubicle they were to remove it and replace it with a 15 watt bulb. They were also to remove shades that might be on any of the lights. A maid was employed who had worked at the hotel for 5 years prior to the fire. Her duties were to make the beds and clean the cubicles. She worked every day except Sunday. It was also her duty to remove any light bulbs that were over 15 watts and to replace them with a 15 watt bulb and to remove any shades she might find on the bulbs.

On March 24, 1960, at about 10:00 a. m. a fire occurred in one of the cubicles on the second floor of the hotel, the third floor of the building. The fire started in the cubicle of a tenant by the name of Hendrickson. There was testimony that Hendrickson had used paper as a lampshade on the light bulb in his cubicle before the day of the fire and that this fact was known by defendant's employees. At the time of the fire, the maid had not yet reached the second floor in her daily cleaning duties, but was still working on the first floor. Plaintiff went to the cubicle where the fire was, kicked open the locked door and among other things tore a burning newspaper from around the light bulb with his bare hands and then trampled on the paper after he threw it to the floor. During this process his pants caught fire and he sustained burns to his hands and legs. The light, a 75 watt capacity bulb, was still on after the fire was extinguished.

Defendant's theory of the case is (1) that there was insufficient evidence for the jury to find defendant guilty of any negligence, (2) that plaintiff was guilty of negligence as a matter of law, (3) that the court erred in its rulings on the admissibility of certain evidence, (4) that the court erred in its rulings on certain instructions submitted to the jury, (5) that the jury's answer to a special interrogatory was against the manifest weight of evidence, and (6) that the verdict was excessive.

█ We disagree with defendant's first contention. There was sufficient evidence for the jury to find defendant guilty of negligence. There are five allegations of negligence contained in plaintiff's complaint and they read as follows:

1. Failed to provide lamp shades for the lights in the tenants' rooms when he knew said tenants were in the habit of placing makeshift lamp

shades of combustible material on said lights in close proximity to the bulbs so as to create a danger of fire;

2. Suffered and permitted an exposed burning light bulb to be shielded with combustible material in such close proximity to the bulb as to create a danger of fire;

3. Failed to inspect said premises and to discover the presence of the said burning electric light bulb shielded with inflamable [sic] paper, and to ascertain whether the same was safe for the plaintiff and others invited into said premises as paying guests;

4. Suffered and permitted a tenant to remain in the hotel without providing him with permanent type lamp shades when it was known by the defendant that said tenant had placed combustible material in such close proximity to an exposed electric light bulb as to create a danger of fire;

5. Failed to maintain and have readily available a fire extinguisher in the area of and in close proximity to the area where said burning electric light bulb, shielded with paper, was located.

The fire in question occurred in the cubicle occupied by Hendrickson, when a newspaper which had been placed over the bulb, caught fire. Hendrickson was a permanent tenant of the hotel and occupied his cubicle for some months prior to the date of the fire. There was evidence that Hendrickson had used newspaper as a shade for the bulb on prior occasions, that this practice was known to defendant's employees and that defendant took no steps to remove Hendrickson as a guest in the hotel. There was also evidence that defendant's employees could enter the cubicles to inspect the premises and that defendant had knowledge that certain tenants

were in the habit of placing makeshift shades of combustible material on the lights. The verdict of the jury was proper.

■ ■ Defendant's second contention is that there was insufficient evidence to support the jury's finding that plaintiff was free from contributory negligence. It is true, as defendant points out, that the humanitarian doctrine applies only to persons attempting to save the life or secure the safety of another person. West Chicago St. Ry. Co. v. Liderman, 187 Ill 463, 470, 58 NE 367 (1900), Divine v. Pfaelzer, 277 Ill 255, 115 NE 126 (1917). Plaintiff testified that when he first saw the fire, he believed that Hendrickson was in the cubicle. It is also true that he testified that after he kicked the door in, he saw there was no one in the room. We feel, however, that it was reasonable for plaintiff, even after seeing no one was in the room, to jerk the blanket off the bed and tear the newspaper off the bulb in an attempt to put out the fire and that the jury could and did so find.

Defendant points out that two or three minutes elapsed from the time he knew that no one was in the room until he had put out the burning newspaper. This is only half true in that there was also evidence submitted, by plaintiff, that he was busy jerking the blanket off the bed, putting out the fire on the blanket, sheet and mattress, prior to tearing the newspaper from the bulb.

Defendant also points out that because plaintiff worked on the premises, he should have been aware of the fact that there was a fire extinguisher close to the cubicle. Again, the jury could have properly found that a reasonable man would have acted in the same manner under the circumstances.

Defendant further points out that plaintiff had creosote on his pants from working on the railroad. It was contended that the creosote made the pants more flam-

125

mable. Defendant, however, in his argument on damages, stated that plaintiff had not been working on the railroad for the past few years. Defendant cannot accept plaintiff's testimony of his working on the railroad when he deems it favorable to his cause and then reject the same testimony when it is unfavorable.

■ ■ Defendant's third contention is that the trial court committed prejudicial error in its rulings on the admissibility of certain evidence. The first allegation of error is that one Dr. Leonard Smith was erroneously allowed to testify as a treating doctor and it was therefore improper for him to offer testimony as to plaintiff's medical history and complaints. We disagree. There was testimony in the record that Dr. Smith recommended a shoe lift.

Furthermore, the history of the accident given by plaintiff and the extent of the burns received by plaintiff were, in the main, not in dispute. Defendant contends, however, that the effect of the testimony was prejudicial in that Dr. Smith testified that plaintiff stated that in kicking open the door, some burning paper came down on him, burning his left leg and hands. We disagree. This testimony was not prejudicial because, as we have pointed out above, the fact that plaintiff was engaged in putting out the fire in the blanket, sheet and mattress prior to pulling down the flaming newspaper from around the bulb was not unreasonable conduct under the circumstances.

■ ■ Defendant next alleges error in that the cross-examination of one Charles Farley, by plaintiff, was outside the scope of defendant's direct examination. Plaintiff's purpose in exacting this testimony was to show that defendant had knowledge that larger bulbs had been placed in the socket on prior occasions by Hendrickson. We find that the cross-examination was outside the scope of defendant's direct examination and was erroneous. There was, however, testimony by Flora Williams,

the maid, that she had on occasion found larger bulbs in the sockets and had replaced the larger bulbs with 15 watt bulbs. This testimony elicited by plaintiff was cumulative and therefore not prejudicial.

 Defendant next alleges that the court erred in sustaining plaintiff's objection to a certain question put to defendant's witness, Richard Eddy, and in refusing defendant's offers of proof thereon. Defendant offered to prove by witness, Eddy, that the tests run on a 40 watt bulb showed that the maximum bulb coat temperature was 397° Fahrenheit and that the bulb coat temperature of a 75 watt bulb, the capacity of the bulb found in the light fixture after the fire, would be higher. Plaintiff's position is that this evidence would have been speculative. We agree with plaintiff. The evidence of a higher bulb coat temperature was irrelevant and immaterial to the issue of defendant's negligence, in that no evidence was offered that the same fire could not have happened if Hendrickson had used a newspaper shade over a 15 watt bulb.

 Defendant next alleges error in that the court permitted plaintiff's witness, one Leo Kenyon, to testify in rebuttal. Leo Kenyon testified that he had been playing Dominos with plaintiff until the time of the fire. He also testified that there were no fire extinguishers in the area. We feel that it was proper rebuttal testimony and not cumulative of plaintiff's testimony in that defendant testified in his case in chief, by implication, that plaintiff was an alcoholic and thus impliedly drunk at the time of the fire. Kenyon's testimony with respect to the fact that he had been playing Dominos with plaintiff until the time of the fire was for the purpose of showing that plaintiff was not intoxicated at the time of the fire.

 Defendant next alleges error in that the court limited defendant's cross-examination of the witness, Leo Kenyon, after permitting him to testify as

to alleged nonrebuttal matters. Defendant on cross-examination asked Leo Kenyon whether he had been a tenant of the hotel on numerous occasions and whether he had knowledge of the existence of fire extinguishers on the first floor of the hotel. It was not error for the court to sustain plaintiff's objections, as it was improper cross-examination.

Defendant next contends that the court erred in instructing the jury. Over defendant's objection, the court gave the following instruction:

Plaintiff's Instruction No. 2.

The plaintiff claims that he was injured and sustained damage while exercising ordinary care, and that the defendant was negligent in one or more of the following respects with respect to the maintenance and control of his hotel rooming house:

Failed to provide lamp shades for the lights in the tenants' rooms when he knew said tenants were in the habit of placing makeshift lamp shades of combustible material on said lights in close proximity to the bulbs so as to create a danger of fire;

Suffered and permitted an exposed burning light bulb to be shielded with combustible material in such close proximity to the bulb as to create a danger of fire;

Failed to inspect said premises and to discover the presence of the said burning electrical light bulb shielded with inflamable [sic] paper, and to ascertain whether the same was safe for the plaintiff and others invited into said premises as paying guests;

Suffered and permitted a tenant to remain in the hotel without providing him with a permanent type lamp shade when it was known by the defendant that said tenant had placed combustible material in such

close proximity to an exposed electric light bulb as to create a danger of fire;

Failed to maintain and have readily available a fire extinguisher in the area of and in close proximity to the area where said burning electrical light bulb, shielded with paper, was located.

The plaintiff further claims that one or more of the foregoing was the proximate cause of his injuries.

The defendant denies that he was guilty of negligence in doing any of the things claimed by plaintiff, and denies that the plaintiff was in the exercise of ordinary care.

The defendant further denies that plaintiff was injured to the extent claimed or sustained damages to the extent claimed.

The defendant's objection to this instruction is fivefold, in that it would lead the jury to believe that because the defendant did not provide lampshades, they could find in favor of the plaintiff; in that it would permit the jury to find in favor of plaintiff even if there was no evidence in the record to show that the defendant had noticed that the tenant had placed a shade over the bulb; in that there was no evidence that defendant failed to inspect the premises where the fire occurred; in that it told the jury that there was a duty upon defendant to provide a tenant with a permanent type lampshade for the bulb and finally, in that it charged that defendant failed to maintain and have readily available a fire extinguisher, contrary to the manifest weight of the evidence. This is IPI Instruction 20.01, modified to fit the allegations of the complaint and answer and supported by sufficient evidence to warrant such an instruction. After reviewing the evidence, we cannot see where the court committed error in the giving of this instruc-

tion, inasmuch as it concisely stated the issues of the pleadings without undue emphasis or characterization.

The court also gave the following two instructions:

Plaintiff's Instruction No. 7.

If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant:

The nature, extent and duration of the injury.

The disability and disfigurement resulting from the injury.

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

The reasonable expense of necessary medical care, treatment and services received.

The value of salaries lost and the present cash value of the salaries reasonably certain to be lost in the future.

Whether any of these elements of damages has been proved by the evidence is for you to determine. Your verdict must be based on evidence and not upon speculation, guess or conjecture.

Plaintiff's Instruction No. 8.

In the event that you find that plaintiff is entitled to damages arising in the future because of injuries or because of future medical expenses or because of loss of earnings you must determine the amount of these damages which will arise in the future.

130

If these damages are of a continuing nature, you may consider how long they will continue. If they are permanent in nature then in computing these damages you may consider how long the plaintiff is likely to live.

With respect to a loss of future earnings you may consider that some persons work all their lives and others do not; that a person's earnings may remain the same or may increase or decrease in the future.

According to a table of mortality in evidence, the life expectancy of a person aged 55 years is 19 years. This figure is not conclusive. It is the average life expectancy of persons who have reached the age of 55 years. It may be considered by you in connection with other evidence relating to the probable life expectancy of the plaintiff in this case, including evidence of his occupation, health, habits, and other activities, bearing in mind that some persons live longer and some persons less than the average.

In computing the damages arising in the future because of injuries, because of the loss of future earnings you must not simply multiply the damages by the length of time you have found they will continue or by the number of years you have found the plaintiff is likely to live. Instead, you must determine their present cash value. "Present cash value" means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the damages, expenses, and earnings at the time in the future when the damage from the injury will be suffered, the expenses must be paid or the earnings would have been received.

Damages for pain and suffering, disability and disfigurement are not reduced to present cash value.

131

Plaintiff's Instruction No. 7 is IPI Instruction 30.01, wherein the appropriate elements have been added to apply to the instant case. Plaintiff's Instruction No. 8 is IPI Instruction 34.04, on mortality tables as evidence of damage.

Defendant alleges that the giving of these instructions was error in that plaintiff's left leg was amputated, from an unrelated cause, subsequent to the injuries complained of, but prior to the trial, and any disability, disfigurement or future pain and suffering were eliminated by the amputation. There was no error committed by the court in giving these instructions. The general rule is that a plaintiff can recover for the proximate results of a wrongdoer's negligence, but not for the subsequent injuries which are the result of an independent act. 22 Am Jur2d 167, 76 ALR 1285. A plaintiff, however, in order to recover damages for permanency of an injury and future pain and suffering, even if related to the wrongdoer's negligence, must prove that these elements of damage are reasonably certain to continue beyond the date of the trial. 22 Am Jur2d 156. Therefore, we agree with defendant that the amputation of the injured portions of the leg would eliminate any recovery for disability, disfigurement and future pain and suffering. The facts in the instant case, however, reveal that plaintiff suffered injuries to both of his hands, his right leg and to his left leg above the point of the subsequent amputation. Therefore, it was not error for the court to give these instructions, in that there was permanent injury and future pain and suffering remaining despite the subsequent amputation.

The fifth contention urged by the defense is that the jury's answer to a special interrogatory, which found the plaintiff not guilty of contributory negligence was against the manifest weight of the evidence. We have previously discussed this in considering defendant's sec-

ond contention, in which we found that the verdict was not against the manifest weight of the evidence.

■■ Finally defendant contends that the verdict of the jury was excessive in the light of the evidence presented. We disagree with defendant. There was testimony by Dr. Smith that plaintiff was permanently disabled. There was also testimony that plaintiff was making $2,500 to $3,200 a year prior to the fire. It is true, as defendant pointed out that there was testimony that he had not worked for four years prior to the fire. Considering the life expectancy of plaintiff, however, the jury would have been justified in awarding plaintiff a sum of over the $25,000, which he received. Furthermore, as explained above, the fact that plaintiff subsequently had his leg amputated as a result of another accident, would under the circumstances, not justify a reduction of the verdict.

For the reasons above stated, the judgment of the lower court is affirmed.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.