**John F. BUCHALSKI, Plaintiff,**

v.

**UNIVERSAL MARINE CORPORATION, Defendant and Third-Party Plaintiff,**

v.

**ROTHSCHILD–WASHINGTON STEVEDORING COMPANY, Third-Party Defendant.**

No. 4–73C2.

United States District Court,
W. D. Washington.

March 27, 1975.

———◆———

Bert H. Weinrich, Richard W. Pierson, Thom, Mussehl, Navoni, Hoff & Pierson, Seattle, Wash., Newton R. Brown, Wilmington, Cal., for plaintiff.

Theodore A. LeGros, Howard, LeGros, Buchanan & Paul, Seattle, Wash., for defendant and third party plaintiff.

Donald P. Marinkovich, Detels, Draper & Marinkovich, Seattle, Wash., for third party defendant.

OPINION

BEEKS, District Judge.

This case presents the question of whether plaintiff may recover as damages a full measure of lost future wages when, in the interim between a disabling injury caused by fault of the defendant, and trial of the case, he suffers an independently caused physiological ailment the disabling effects of which parallel those of the first injury.

Plaintiff is a 53-year old longshoreman employed by third party defendant. In January 1972 he sustained a back injury while working aboard the HONG KONG HONOUR, a vessel owned by defendant. Plaintiff brought this action against defendant, alleging that his injuries were the result of defendant's negligence and the unseaworthiness of the vessel.[1] Defendant thereupon instituted a third party action seeking indemnity from plaintiff's employer.[2]

The liability issue was tried to the Court and resolved in favor of plaintiff. Defendant and third party defendant

---

1. *See* Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

2. *See* Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

having reached a settlement between themselves, the indemnity action was dismissed. It was agreed that the matter of damages would be decided by the Court on the basis of briefs and medical reports submitted by the parties. All briefs and reports have been duly submitted and considered: determination of the proper measure of damages due plaintiff is the sole issue now before the Court.

The medical testimony adduced at trial and the medical reports subsequently submitted by both parties indicate that as a result of his accident, plaintiff suffers from a permanent and partially disabling injury to his lower back, the accident having exacerbated a pre-existing weakness of the lower back which had resulted from a prior injury. The evidence, however, supports the conclusion that the pre-existing condition had stabilized at a nondisabling level and could have been expected to remain dormant but for the subsequent injury: defendant is thus liable for the effects of the injury, notwithstanding the fact that those effects might have been less severe but for plaintiff's pre-existing condition. It is a well-established precept of tort law that a tortfeasor takes his victim as he finds him, and must bear liability for the manner and degree in which his fault manifests itself on the individual physiology of the victim.[3]

Plaintiff's injury has caused him to experience low back pain, pain that radiates to his thigh and to his testicles, difficulty sleeping, a loss of libido and general malaise, all of which has resulted in his being restricted to light duty as a longshoreman.

Plaintiff seeks damages, past and future, for medical expenses, pain and suffering, and lost wages. The record before the Court, including adequate documentation of plaintiff's physical injuries and a comprehensive compilation of the past earnings of plaintiff and three comparable fellow workers, provides the Court with a sufficient basis for determining the measure of damages. What would otherwise be a straightforward determination is, however, complicated by the fact that on August 30, 1974, plaintiff suffered a mild heart attack. This raises the question of what effect, if any, plaintiff's heart ailment should have on the amount of damages for which defendant is liable.

There is no suggestion that the heart attack was in any way related to the back injury, or otherwise attributable to any acts of defendant. It arose from independent and innocent causes. As a result of the heart attack, plaintiff was hospitalized for the first week of September 1974, thereafter convalescing at home until he returned to work on December 9, 1974. Plaintiff's expert on internal medicine and his treating physician concur that plaintiff has made an excellent recovery from the heart attack and should enjoy a normal work life expectancy. Both doctors agree that plaintiff is fit to return to longshoring, as indeed he has, with the proviso that he refrain from heavy exertion.

Defendant's internist, on the other hand, reports that plaintiff's heart disease is not totally stabilized, and that he would expect plaintiff's symptoms to continue and likely increase. The internist also concludes that the heart problem will prevent plaintiff from "permanently returning to longshoreman type work."

There is no evidence that plaintiff has suffered recurring heart problems since his initial illness on August 30, 1974. His recovery is supported by the fact that he has returned to work, and has been able to assume a work load comparable to that which he bore subsequent to his back injury but prior to his heart

3. *See* Sentilles v. Inter-Caribbean Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959); Steinhauser v. Hertz Corp., 421 F.2d 1169 (2nd Cir. 1970); United States v. Fotopulos, 180 F.2d 631 (9th Cir. 1950); A.L.I. Restatement of Torts 2d § 461; W. Prosser, Law of Torts § 43 at 261 (4th ed. 1971).

attack. Without doubt, there is much "longshoreman type work" for which plaintiff is unfit: Nonetheless, he has been found fit for light duty, and has in fact returned to work in that limited capacity.

Accordingly, I am persuaded by the medical evidence before me that, as a result of his heart ailment, plaintiff suffers only a partial disability, and that the heart problem does not shorten his work life expectancy. I also find that the disability arising out of plaintiff's heart problem parallels that resulting from his back injury. Specifically, plaintiff's heart problem does not cause him any disability beyond that already sustained as a result of his back injury. It therefore might properly be said that the present disability is the result of two separate and independent causes, either of which, operating singly, would have achieved the identical practical result: that of rendering plaintiff fit only for light duty as a longshoreman.

It is not contended by either party that the heart ailment affects defendant's liability for damages with regard to past or future pain and suffering or medical expenses, or with regard to plaintiff's wage loss prior to the date of his heart attack. It is, however, the contention of defendant that its liability for lost wages must not extend beyond the date of the heart attack.

Defendant argues as follows: There exists a situation in which two successive and independent injuries have been sustained, each of which produced, or would have produced, a similar impairment of earning capacity. Defendant may be held liable only for such damages as may be proximately related to the first injury. Such damages extend only up to the point of the second injury, at which time defendant's acts were superseded or supplanted by the heart attack as a cause of disability.

Defendant has not cited any direct authority in support of its position. Rather, it asserts the applicability of legal principles that are, in my view, properly cognizable only under circumstances materially different from those present here.

Defendant first refers the Court to a learned discussion regarding apportionment of damages.[4] Apportionment of damages is a potential issue in cases wherein successive injuries of discernibly independent origin befall a plaintiff, conjunctively resulting in a greater total harm than either injury, in itself, would have caused. The object of apportionment is to limit a defendant's liability to that part of the harm which he has in fact caused.[5]

In the present case, however, apportionment is unnecessary to limit defendant's liability. There is no element of harm suffered by plaintiff beyond that resulting from his back injury. The acts of defendant have caused plaintiff to sustain an impairment of his wage earning ability to the extent that his back injury renders him fit only for light duty as a longshoreman. There is no additional harm arising from plaintiff's heart attack: there is only a parallel harm. Accordingly, there is no need to invoke apportionment to relieve defendant of the burden of a liability *increased* by an independent cause. The cases cited by defendant that apply principles of apportionment under factual situations wherein a defendant is properly liable for only a portion of a greater overall injury suffered by the plaintiff, thus are not applicable to the present case.

Defendant's second argument poses an analogy between the facts of the present case and those of Jurney v. Lubeznik.[6] In *Jurney*, the plaintiff suffered burns to his left leg in a hotel fire attributable to the defendant's negligence. Plain-

---

4. Prosser, *supra* note 3, § 52 at 313–23.

5. *Id.* at 313–14.

6. 72 Ill.App.2d 117, 218 N.E.2d 799 (1966).

tiff's left leg was later amputated as a result of an unrelated injury that occurred subsequent to the hotel fire but prior to the time of trial. Defendant therein contended that any disability, disfiguration or future pain and suffering, otherwise attributable to burns of the left leg, were eliminated by the amputation. The trial court in *Jurney* agreed with defendant to the extent that defendant was held to be not liable for damages for disfiguration or pain and suffering beyond the time of the second injury. It was properly reasoned that a loss to plaintiff in the nature of disfiguration, pain or suffering arising from burns to his left leg could not continue beyond the time of the loss of the offending limb.

Defendant relies on *Jurney* for the proposition that when a subsequent injury terminates a defendant's negligence as the proximate cause of a plaintiff's future disability, the defendant's liability continues only to the time of the subsequent injury. Even if the court in *Jurney* did so hold, it did so on the basis of a factual situation clearly distinguishable from that of the present case. In *Jurney*, the injured left leg, source of potential future disfigurement, pain and suffering, had ceased to be a part of plaintiff's anatomy. In the instant case, however, plaintiff's back injury continues as a source of his disability. It has been joined as such a source by a subsequent independent injury, but it has not been eliminated thereby. Defendant's reliance on *Jurney* is misplaced.

It appears to the Court that the basic weakness of defendant's arguments is their reliance on the element of proximate causation. Defendant argues that subsequent to plaintiff's heart attack his back injury ceased to be the proximate cause of his disability. The law, however, does not restrict itself to the view that any injury must be attributed to only one cause, or that proximate causation is an essential element of liability. In many situations a finding of legal causation is sufficient, and the presence of multiple contributing causes will not preclude a finding of liability against a defendant who has provided a legal cause of a plaintiff's injury.[7]

This point is made clear in the English case of Baker v. Willoughby,[8] which involved a factual situation identical to that of the *Jurney* case. In *Baker*, plaintiff's leg had been severely injured in an automobile accident attributable to the fault of the defendant. Prior to the trial at which plaintiff sought to recover damages arising from the automobile accident, including damages for impaired earning capacity, the plaintiff was shot in the leg during an armed robbery and the leg had to be amputated. The trial court refused to consider the amputation in mitigation of defendant's liability, but was reversed by the court of appeals. In reinstating the verdict of the trial court, the House of Lords declined to accept the defendant's argument that the intervening subsequent agency should act to release the first tortfeasor from liability for damages for impairment of earning capacity. Lord Reid reasoned as follows:

"If it were the case that in the eye of the law an effect could have only one cause then the respondent might be right. It is always necessary to prove that any loss for which damages can be given was caused by the defendant's negligent act. But it is commonplace that the law regards many events as having two causes

. . .

"I see no reason why the appellant's present disability cannot be regarded as having two causes, and if authority be needed for this I find it in Harwood v. Wyken Colliery Co. [1913] 2 K.B. 158. That was a Workmen's

7. Spinks v. Chevron Oil Co., 507 F.2d 216, 223 (5th Cir. 1975). *See also* Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir. 1970); text accompanying notes 12–14 *infra*.

8. [1970] A.C. 467.

Compensation Act case. But causation cannot be different in tort. There an accident made the man only fit for light work. And then a heart disease supervened and it also caused him only to be fit for light work. The argument for the employer was the same as in the present case. Before the disease supervened the workman's incapacity was caused by the accident. Thereafter it was caused by the disease and the previous accident became irrelevant: he would have been equally incapacitated if the accident had never happened. But Hamilton L.J. said, at p. 169:

"'. . . he is not disentitled to be paid compensation by reason of the supervention of a disease of the heart. It cannot be said of him that partial incapacity for work has not resulted and is not still resulting from the injury. All that can be said is that such partial incapacity is not still resulting "solely" from the injury.' "[9]

Concurring with Lord Reid, Lord Pearson offered this additional observation:

"The original accident caused what might be called a 'devaluation' of the plaintiff, in the sense that it produced a general reduction of his capacity to do things, to earn money and to enjoy life. For that devaluation the original tortfeasor should be and remain responsible to the full extent, unless before the assessment of the damages something has happened which either diminishes the devaluation (e. g. if there is an unexpected recovery from some of the adverse effects of the accident) or by shortening the expectation of life diminishes the period over which the plaintiff will suffer from the devaluation." [10]

I believe that *Baker* and the *Harwood* case cited therein present the correct statement of the law, and compelling arguments in support thereof. There is an additional persuasive argument presented by plaintiff's brief and adverted to by the House of Lords in *Baker*.[11] The argument is as follows: Assume that B negligently injures A to the extent that A suffers a 50 percent loss of earning capacity. Assume further that prior to trial in respect thereto A suffers, as a result of the negligence of C, an injury that causes no *additional* earning impairment, but one that would have resulted in a 50 percent disability without regard to the first injury. In such a case, C, having injured a 50-percent man, is liable for A's lost earning capacity only to the extent that the loss exceeds 50 percent. Under the given facts there is no additional disability, so C incurs no liability for A's lost earning capacity. Under the theory presented by defendant herein, however, B's liability would terminate with the occurrence of the second injury, and A would thus be unable to recover from either tortfeasor. Such a result would be manifestly unjust and I reject a theory of law the principled application of which would result in such an injustice.

Accordingly, I choose to adopt the reasoning expressed by the House of Lords in Baker v. Willoughby. I conclude that plaintiff's back injury continues as a legal cause of the full extent of the disability now borne by plaintiff, and that plaintiff's subsequent heart ailment does not act to reduce defendant's liability for the lost earning capacity arising from that injury. Because of strong policy considerations, legal cause analysis is particularly suited to maritime tort law.[12] Shipowners have been charged with a high standard of duty toward seamen. This high standard is evidenced by the strict liability imposed against a shipowner under his warranty

9. *Id.* at 492.

10. *Id.* at 496.

11. *Id.* at 495.

12. *See* Spinks v. Chevron Oil Co., 507 F.2d 216, 223 (5th Cir. 1975).

to provide a seaworthy vessel.[13] It would be anomalous to allow overly strict interpretations of proximate cause to defeat the remedial purpose of admiralty tort law.[14] The acts of defendant are a legal cause of plaintiff's disability, and I therefore find defendant liable for the full measure thereof: the fact of plaintiff's heart ailment does not operate to terminate defendant's liability for lost earning capacity.

Turning now to computation of the damages to be awarded plaintiff, the Court acknowledges the assistance provided by the pretrial order, in which the parties have stipulated to the earnings of the plaintiff and three comparable fellow workers over the period of January 1970 through August 1974.

For the two years prior to his accident in January 1972, plaintiff's earnings were 6.6 percent less than the average of his three fellow workers. Thereafter, his earnings fell to a level of 31 percent less than that of the control group. The impairment of plaintiff's earning capacity that may thus be attributed to his back injury is 24.4 percent.

The average annual earnings of the control group over the four years and seven months prior to August 1974 is $16,072.66. This figure will be used as the basis to compute plaintiff's future wage loss. Based upon this figure, plaintiff's 24.4 percent disability will yield an annual wage loss of $3,921.72. Under the terms of his union contract, plaintiff must retire when he reaches the age of 65 in June 1986. From August 1, 1974[15] through June 30, 1986, plaintiff might thus be expected to incur a wage loss of $46,735.14.

Using a discount value of 5 percent, as defendant suggests, the present value of plaintiff's lost future wages is $34,517.99. This discounted figure does not take into consideration the element of inflation and potential future wage increases. However, given the current uncertain economic climate, I would hesitate to base an award of damages on the continuance of economic inflation for the next decade. Further, although the discounted figure does not provide for inflation, neither does it subtract for taxation or a recessionary decrease in the quantum of available longshore work. Accordingly, plaintiff is entitled to recover as lost future wages the amount of $34,517.99.

Plaintiff seeks to recover the amount of $8,693.00 as damages for wages lost from the time of his injury to August 1, 1974. Plaintiff reaches the figure requested by a formula that takes into account his pre- and post-injury earnings, and those of his fellow workers as specified in the pretrial order. I find that plaintiff's computation achieves a fair statement of plaintiff's past wage loss, and recovery is allowed in the amount requested.

Plaintiff has proved and he is entitled to recover medical expenses to the time of trial in the amount of $625.00.

Plaintiff seeks $4,000.00 as damages for future medical expenses, including possible back surgery. None of the

13. This warranty of seaworthiness is also extended to longshoremen. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

14. Spinks v. Chevron Oil Co., 507 F.2d 216, 223 (5th Cir. 1975).

15. The figures with which past and future losses have been computed were compiled for a period ending on August 1, 1974. The parties having stipulated to these figures as an aid to the Court's computation of damages, the August 1, 1974 date is adopted as the cutoff point for past damages, and the beginning point for future damages.

It is noted that plaintiff did not work at all from August 30, 1974 through December 9, 1974 as a result of the temporary total disability caused by the heart attack. Under the rule of Baker v. Willoughby, *supra* note 8, defendant remains liable for plaintiff's back-related 24.4 percent disability through this period. Applying the rule of apportionment, however (*see* text accompanying notes 4–5 *supra*), defendant is liable *only* for that part (24.4 percent) of the greater disability during that period.

medical testimony indicates that there is a reasonable certainty that such surgery will be required. All medical experts concur that surgery is not recommended at this time. There is nothing in the record to remove from the realm of speculation potential damages for future medical expenses: recovery therefor must be denied.

Plaintiff has shown with reasonable certainty, and to the Court's satisfaction, that as a result of his injury, he suffers and will continue to suffer considerable back pain, which also radiates to his upper leg and testicles; sleeplessness; loss of libido; and general malaise. I find that plaintiff's demand for $20,000.00 as damages therefor is reasonable, and I allow recovery in that amount.

On the basis of the above findings, I hold that defendant is liable to plaintiff in the amount of $63,835.99. The foregoing shall constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). Plaintiff is directed to present judgment and decree in accordance herewith.