934 F.2d 225
 John M. JORDAN, Plaintiff-Appellant,
v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant-Appellee,
v.
LIGHTNING MOVING & WAREHOUSE CO., an Arizona Corporation,
Leaseway Co., Third-party-defendants-Appellees.
 No. 89-16717.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1991.
Decided May 31, 1991.
 
 Richard L. Rosett and Ronald Jay Fomalont, Fogel, Feldman, Ostrov, Ringler & Klevens, Los Angeles, Cal., for plaintiff-appellant.
 William L. Thorpe, Fennemore Craig, Phoenix, Ariz., for defendant-appellee.
 Larry J. Cohen, and Phillip H. Stanfield, Jones, Skelton & Hochuli, Phoenix, Ariz., for third-party-defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before HUG, ALARCON and WIGGINS, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 In this action filed pursuant to the Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq., John Jordan appeals the district court's judgment after a jury trial. Although the district court entered a judgment in Jordan's favor based on a verdict against both Atchison, Topeka & Santa Fe Railway Co. ("Santa Fe"), and Leaseway Company and Lightning Warehouse, Inc. ("Leaseway"), Jordan contends that a number of errors by the district court led the jury to render a significantly reduced damage award. The principal contention is that the district court erred in giving an instruction that restricted any calculation of loss of future earnings based upon his physical inability to continue employment with Santa Fe, if the jury found that his preexisting back problems disqualified him from employment there. We conclude that the instruction was erroneous and could have resulted in an erroneous calculation of damages by the jury. Since we reverse on this basis, we need not consider Jordan's other assignments of error.
 
 I.
 
 2
 Jordan was working as a switchman for Santa Fe on January 28, 1986. He was closing a gate at Leaseway when it fell and landed on top of him. He was diagnosed as suffering from a derangement of a disc, but his doctors also discovered that he had spondylolysis and spondylolisthesis, a preexisting condition that made him more susceptible to back injury.
 
 
 3
 Jordan sued Santa Fe and Leaseway for negligence under the Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq. At trial, Jordan presented the medical testimony of Dr. Eskay-Auerbach. The doctor testified that Jordan's low back and left leg pain were caused by the accident having aggravated the preexisting spondylolysis and spondylolisthesis.
 
 
 4
 Also during the trial, Santa Fe presented Dr. John D. Zoltan, who testified that Jordan's accident caused only temporary aggravation of his preexisting spondylolysis and spondylolisthesis. Dr. Zoltan concluded that Jordan's current physical problems were the result entirely of his preexisting condition and were not related to the accident.
 
 
 5
 The jury rendered a verdict in favor of Jordan and found his total damages to be $18,000. The award attributed one-third of the negligence to each of Santa Fe, Leaseway, and Jordan and, thus, would be apportioned in that manner. Jordan filed a motion for a new trial, which was denied. Jordan timely appeals.
 
 II.
 
 6
 There was a legitimate question of fact for the jury, presented by the conflicting medical testimony, as to whether Jordan's physical inability to resume his former employment as a switchman was caused by the injury having aggravated a preexisting back problem, or whether that physical inability to resume work was solely the result of his preexisting back problem itself. This question for the jury was what caused his physical inability to resume work as a switchman.
 
 
 7
 Over Jordan's objection, the district judge gave an instruction that restricted the jury's consideration of the loss of future earnings and benefits, even if the jury found the injury was the cause of his physical inability to return to work. The instruction was:
 
 
 8
 Should you find that the plaintiff would have been disqualified for employment with defendant Santa Fe, if his pre-existing unstable back had been detected before his injury then you should not award the plaintiff further wages based on what plaintiff would have earned had he continued working for defendant Santa Fe.
 
 
 9
 This instruction introduced a new limitation on entitlement to the loss of future earnings that was not dependent upon Jordan's prior physical ability to do the work, but rather on his qualification to do so. The court relied upon the authority of Parra v. Atchison, Topeka & Santa Fe Ry. Co., 787 F.2d 507 (10th Cir.1986) in deciding to give the instruction. Although the other usual instructions concerning the calculation of loss of future earnings and earning capacity were given, this instruction loomed large as a limiting factor because the principal evidence relied upon by Jordan's expert witness in the calculation of the loss of future earnings was based upon the difference between the wages and benefits Jordan was able to earn had he been able to continue to work as a switchman for Santa Fe and the wages and benefits he was able to earn in his permanently disabled condition. One of the defense attorneys stated in final argument that this instruction was "the most important jury instruction in the case." TR V117, pg. 180.
 
 
 10
 Jordan had been employed as a switchman by Santa Fe for over eight years. He had passed the physical examination when he was hired and had passed several since. He experienced no physical problems in doing his work. The testimony of his treating physician, Dr. Eskay-Auerbach, provided evidence that as a result of the aggravation caused by the injury to his preexisting back condition, he was no longer able to work as a switchman. Jordan's personal testimony corroborated this.
 
 
 11
 The doctor testifying for the defense, Dr. Zoltan, stated that it was the preexisting back condition that was causing the disability, preventing Jordan from resuming his employment as a switchman. A Santa Fe official testified that if the company had known that Jordan had the preexisting back weakness, he would not have been approved for employment as a switchman and that had Santa Fe learned of the problem, they would have withheld him from service.
 
 
 12
 The effect of the instruction was to require the jury to find that even if the injury was the physical cause of Jordan's inability to resume his employment, he could not recover for those lost future wages and benefits because Santa Fe would have found him "disqualified" to perform the work had they known about his preexisting back weakness. This is despite the fact he had been performing the job satisfactorily for over eight years.
 
 
 13
 There are several deficiencies in this approach. First, and most simply, Jordan was working at his job satisfactorily; neither Santa Fe nor Jordan knew of this preexisting back condition; and it was the accident that caused Santa Fe to be aware of any "disqualification." The jury could have found that, absent the accident, Jordan would have continued to perform in that job satisfactorily until retirement age. The instruction prevented such a finding.
 
 
 14
 More basically, Jordan had been hired and had been performing the job for over eight years, so any rule disqualifying a job applicant for work as a switchman because of a physical disability is irrelevant to Jordan's claim. He had the job. The testimony of the company official that the company would have been able to fire Jordan had they learned of his back weakness from another source is subject to serious doubt, given the current legislation and policies against discriminating against physically handicapped persons in jobs they are able to perform. Jordan had eight years' proof he was able to perform the job. At least this question would be one for the jury to resolve. The disputed instruction removed that issue from the jury. The instruction compelled the jury to rule out lost earnings and benefits from Santa Fe's employment simply if they found Jordan would have been "disqualified" under company regulations once the company learned of the handicap.
 
 
 15
 In giving the instruction in question, the district court, as we stated, relied on Tenth Circuit's Parra opinion. In that case, the plaintiff was injured on the job and was unable to return to his previous job because his physical activity was severely limited and he could not perform any heavy lifting. The only medical testimony was that of his treating physician who testified that the plaintiff suffered from a congenital back condition that would have disqualified him from work as a heavy laborer had it been detected. The court stated:
 
 
 16
 [P]laintiff's expert testimony refutes the causal connection between his injury and his diminished capacity for heavy labor. In light of Dr. Mitchell's further opinion that Mr. Parra's back was more stable after surgery than prior to his accident, it seems improper for plaintiff to be compensated for future wages from heavy labor for which his preexisting congenital back disorder had already disqualified him.
 
 
 17
 For these reasons we must conclude that the trial court erred in instructing the jury on the value of future earnings from heavy labor as an element of plaintiff's damages. Consequently, the case is remanded for a determination of damages not to include future earnings.
 
 
 18
 There is an obvious distinction between this case and Parra. In the Parra case, the uncontroverted testimony was that the plaintiff's back was more stable after surgery than prior to his accident. In this case, Jordan's treating physician testified that his back condition had deteriorated as a result of the injury. The Parra opinion lends itself to the interpretation that the reason for the ruling was that the plaintiff's back was in better condition after the injury and corrective surgery than before, and thus the injury could not be the cause of the loss of future earnings. We find no quarrel with that interpretation. The defendants and apparently the district court, however, gave the Parra decision a broader interpretation; they construe Parra to mean that a preexisting disability that would have led to disqualification, had it been detected, was sufficient to preclude recovery for loss of future earnings. If the Parra opinion is given that construction, then in our view, it is simply a misstatement of the applicable tort law.
 
 
 19
 It is a well-settled principle of tort law that when a defendant's negligence causes an injury to a plaintiff, the defendant is liable for the resulting damage to the plaintiff, even though the plaintiff had a preexisting condition that made him more susceptible to injury or made the consequences to him more severe. We held in the context of a case involving a claim under the Longshoremen's and Harbor Workers' Compensation Act that
 
 
 20
 [t]his doctrine of aggravation which holds that the employer must fully compensate an employee whose occupational injury "aggravates" a pre-existing condition to produce disability is, according to the leading commentator, "something expressed by saying that the employer takes the employee as he finds him." 1 A. Larson, Workmen's Compensation Law Sec. 12.21 at 3-381, 3-433 (1990).
 
 
 21
 SAIF Corp./Oregon Ship v. Johnson, 908 F.2d 1434, 1441 (9th Cir.1990). That doctrine is equally applicable here.
 
 The Second Circuit stated
 
 22
 It is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim. The defendant takes the plaintiff as he finds him.
 
 
 23
 Maurer v. United States, 668 F.2d 98, 99-100 (2d Cir.1981).
 
 
 24
 The district court properly instructed on that principle of law. However, the court improperly limited the jury by its instruction that mere "disqualification" under company regulations for the type of work Jordan had performed for over eight years precluded an award for the loss of future earnings based on his expected continued employment as a switchman for Santa Fe. This error requires reversal.
 
 
 25
 The parties have fully litigated the issue of liability and the defendants have not cross-appealed. The only issue on appeal pertains to damages. Therefore, we reverse and remand for a new trial limited to the issue of damages.
 
 
 26
 REVERSED and REMANDED.