# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1432

_____

Jose Villa,

        Appellee,

    v.

Burlington Northern and Santa Fe
Railway Company,

        Appellant.

_____

Association of American Railroads,

      Amicus on Behalf of
      Appellant.

\* Appeal from the United States
\* District Court for the
\* Southern District of Iowa.

_____

Submitted: November 15, 2004
Filed: February 7, 2005

_____

Before WOLLMAN, HEANEY, and FAGG, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Burlington Northern Santa Fe Railway Company (BNSF) appeals from the judgment entered by the district court[1] on the jury verdict in favor of Jose Villa. We affirm.

## I.

Villa, an assistant foreman for BNSF, was injured on October 27, 1999, when the hydraulic spike puller that he was using to remove spikes from the anchor plates on the railway roadbed kicked back, struck him in the stomach, and caused him to fall back. BNSF investigated and documented the accident.[2]

Villa's doctor diagnosed him with a muscle spasm with an acute contusion and strain. Villa underwent back surgery in June 2000 and began physical therapy shortly thereafter. In January 2001, Villa began a work hardening program to prepare him to return to work, but remained in the program for only two weeks. In March 2001, Villa suffered a stroke and was hospitalized for seven days. Dr. Dean E. Smith, Villa's orthopedic surgeon, indicated in Villa's medical records in December 2001 that the stroke, combined with the severe back problems, caused him to be unable to work.[3] In September 2002, Dr. Smith indicated that if Villa's only impairment were his back injury, he would be able to perform light duty work with a thirty-pound weight limit.

Villa filed a lawsuit under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, in June 2002. He claimed that the pressure had been incorrectly set

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]BNSF recorded much of the information on a form that BNSF's national safety reporting and analysis department usually uses to complete and send paperwork to the Federal Railroad Administration documenting such incidents.

[3]Villa suffered a second stroke in late 2002.

on the spike puller, causing the accident and his subsequent injuries. BNSF filed a motion in limine to exclude (1) evidence of Villa's lost earnings and loss of earning capacity after Villa's stroke, and (2) the internal form, "Alternate to FRA F6180.98" that BNSF used to record information that would be reported to the Federal Railroad Administration (FRA). Following a telephonic hearing, the district court denied the motion.

At trial, the parties argued alternative theories for calculating damages. BNSF contended that if the jury determined that Villa could have worked and would have earned an alternative income after the back injury if not for the strokes, it should decrease the loss calculation urged by Villa in order to account for those earnings. During closing argument, BNSF's counsel argued:

> I think it's clear from the evidence that came in, that independent from any type of a back injury, that Mr. Villa would be unable to work, . . . , as a result of the . . . series of strokes he experienced. Prior to those strokes I think the medical evidence is undisputed that he could at a minimum do light-duty work with weight restrictions. After that I think it's pretty clear he can't do anything.

Tr. at 329. Villa, in contrast, argued that he had recovered from many of the restrictions that were associated with the strokes and that his back injury still caused pain and prevented him from returning to work.

Over BNSF's objection, the district court instructed the jury that it could not "compensate Plaintiff for any stroke occurring after" the date of the injury, but that a stroke "alone does not make Plaintiff ineligible for damages, unless you find by a preponderance of the evidence that Plaintiff has not proven that the damages were causally related to the October 27, 1999 incident." BNSF's rejected requested instruction stated in part that "Plaintiff is not entitled to any damages for lost earnings or loss of earning capacity after the date Plaintiff becomes afflicted with a disabling

-3-

illness or disease unless that disabling illness or disease was caused or aggravated by any negligence of the Defendant." As indicated above, the jury found in Villa's favor and awarded damages in the amount of $703,268.15. BNSF moved for judgment as a matter of law, renewing the motion that it had raised at the close of plaintiff's case and echoing its pre-trial argument that evidence of Villa's lost earnings and loss of earning capacity after his stroke was inadmissible.

## II.

BNSF contends on appeal that the district court improperly applied FELA when it allowed the introduction of evidence of lost earnings and loss of future earning capacity after the date of Villa's post-accident disabling strokes. BNSF asserts that the district court therefore erred when it denied the pretrial motion, the requested jury instruction, and the motion for judgment as a matter of law.

To succeed on his FELA claim, Villa was required to show that, while he was working for the railroad, he was injured "resulting in whole or in part from the negligence of any of the officers, agents, or employees of [the common carrier by railroad], or by reason of any defect or insufficiency, due to its negligence," in its equipment. See 45 U.S.C. § 51.[4] BNSF does not challenge the finding of liability, but argues that Villa's stroke-related health problems limit the scope of damages that the jury is allowed to award.

We review de novo the district court's denial of a motion for judgment as a matter of law, analyzing the evidence in the light most favorable to the prevailing party and making all reasonable inferences in favor of the jury's verdict. See United Fire & Cas. Co. v. Historic Pres. Trust, 265 F.3d 722, 726-27 (8th Cir. 2001). We

---

[4]Negligence, for purposes of FELA, exists if defendants knew or should have known "that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." Urie v. Thompson, 337 U.S. 163, 178 (1949). Knowledge of inadequacy is a factual question for the jury. Id. at 178-79.

-4-

review for abuse of discretion the district court's decision to give a particular jury instruction, asking "'whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.'" Omega Healthcare Investors, Inc. v. Lantis Enters., 256 F.3d 774, 776 (8th Cir. 2001) (quoting Oriental Trading Co., Inc. v. Firetti, 236 F.3d 938, 946-47 (8th Cir. 2001)). The instructions must reflect the legally correct theory of the case. Id.

It is an issue of first impression in this court whether, when a FELA plaintiff has suffered an independent injury or condition subsequent to the injury at issue in the case, the jury may view all of the evidence and decide if the plaintiff should be awarded damages for lost earnings and loss of earning capacity despite the additional disability, or whether FELA calls for a bright-line rule restricting such evidence.

The district court followed the reasoning in Buchalski v. Universal Marine Corp., 393 F. Supp. 246 (W.D. Wash. 1975), and ruled that a subsequent condition may be considered a parallel injury to the first one, "both of which [are] responsible for Plaintiff's inability to perform other than light duty work." D. Ct. Order of Jan. 8, 2004, at 6.

BNSF urges us to adopt the reasoning of the First and Sixth Circuits and to hold that when a condition that would have rendered the plaintiff unable to work even absent the prior injury develops, independently and subsequently to the work-related injury, the plaintiff may not recover damages for earnings past the point when the subsequent condition occurred. See Harris v. Illinois Central R.R. Co., 58 F.3d 1140, 1144-45 (6th Cir. 1995); Stevens v. Bangor and Aroostook R.R. Co., 97 F.3d 594, 599 (1st Cir. 1996).

We conclude that, when faced with conflicting testimony about the cause of a railroad worker's inability to work, it is for the jury to determine damages in light of

all of the evidence. We agree with the First Circuit that evidence related to a subsequent independent debilitating condition should be admitted if there is medical testimony regarding the effect of the subsequent condition on the worker's life and work expectancy. Stevens, 97 F.3d at 599-600. We do not believe it follows, however, that the court must, in light of such evidence, restrict testimony on potential earnings. But see id. (suggesting that the court would likely impose such a restriction, but not reaching the issue because defendant had not provided evidence regarding the subsequent condition). FELA is a broad remedial statute based on fault, not a workers' compensation statute, and is intended by Congress to protect railroad employees by doing away with certain common law tort defenses. Norfolk & Western Ry. Co. v. Ayers, 538 U.S. 135, 145 (2003); Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994). Apart from those statutorily abrogated defenses, common-law tort principles are informative and applicable. Norfolk, 538 U.S. at 145.

We should be cautious about overly limiting the jury's consideration of fault and causation in FELA cases when the medical testimony is ambiguous. We believe that it is "a legitimate question of fact for the jury . . . as to whether [plaintiff's] physical inability to resume his former employment" was caused by his injury or by an independent condition. Jordan v. Atchison, T & S.F.R. Co., 934 F.2d 225, 227 (9th Cir. 1991) (finding that an instruction that restricted the calculation of loss of future earnings based on a physical inability stemming from preexisting back problems too restrictively limited the jury's fact-finding role and should not have been given). Id. at 226. The Ninth Circuit indicated in Jordan that an instruction limiting the calculation of loss of future earnings may be appropriate in a case where the claimant experiences or could have experienced complete recovery from the workplace injury, but was kept disabled by another condition; such an instruction is not appropriate, however, when the effects of the condition and the injury are not completely separable. See id. at 228. Although Jordan involved a preexisting condition instead of a subsequent condition, we believe that the same reasoning applies here.

We conclude, then, that unless the effects of the work-related injury and the subsequent condition are completely separable, it is a question of fact for the jury in FELA cases whether the injury continues to contribute to an inability to work after the advent of the subsequent condition. Both parties should be permitted to present evidence, cross-examine each other's witnesses, and present to the jury the methodologies that they believe should be applied in the calculation of damages.

In this case, the factual dispute over what really caused Villa's present pain and inability to work was presented to the jury. Both the back injury and the strokes caused disability, and counsel for each party presented evidence and argued to the jury their respective views on how damages should be calculated in light of that fact. BNSF argued that Villa could have been working again if not for the strokes, and that, if the jury found it liable, the jury should limit the damages sought by the plaintiff to account for the disability independently caused by the strokes.[5] Villa argued that his strokes had not significantly disabled him and that his back pain still severely limited his activity and prevented him from working.

In addition, the only medical testimony submitted at trial on this issue was ambiguous. Dr. Smith, an orthopedic surgeon and not an expert on the effects of strokes, testified that Villa progressed well in physical therapy after the surgery and that he had recommended that Villa look for light-duty work. Dr. Smith indicated that the occurrence of Villa's strokes changed his expectations for Villa to return to work, but also stated that Villa's back condition is permanent, continues to cause pain, and prevents him from returning to his former job. The doctor who had treated

---

[5]BNSF countered the assumption that Villa's back injury prevented him from working again through cross examination of the plaintiff's expert on loss calculation, and through its own witness's testimony that there were several restricted duty jobs that Villa could have taken after his back injury in which he could have earned a significant salary.

Villa for his strokes did not testify, and BNSF presented no specific evidence regarding the impact of the strokes on Villa's ability to work.

We agree that a defendant's liability should not extend beyond the harm that he has actually caused. See Buchalski, 393 F. Supp. at 1249. We also agree, however, that "the presence of multiple contributing causes will not preclude a finding of liability against a defendant who has provided a legal cause of a plaintiff's injury." Id. at 1250. Juries are capable of finding the facts related to causation and of applying in an appropriate manner the liability-limiting principles of law set forth in the court's instructions. Here, the district court properly admitted all the evidence and issued an instruction that appropriately outlined the law that the jury was to apply in arriving at a damages award.[6]

## III.

BNSF also argues that the district court erred in denying its motion to exclude BNSF's internal form, "Alternate to FRA F6180.98 Personal Injury Report to Employee on Duty." It argues that the information included in the form parallels the information in the privileged reports filed with the FRA that 49 U.S.C. § 20903 excepts from use in a civil action for damages.[7] It asserts that its internal form

---

[6]Although we agree that the court's instruction was appropriate in this case, this is not to say that a variation of that instruction which incorporated some of the wording in BNSF's requested instruction might not also be appropriate in a given case.

[7]49 U.S.C. § 20903 states that:

No part of an accident or incident report filed by a railroad carrier under section 20901 of this title or made by the Secretary of Transportation under section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report.

-8-

should therefore also receive the evidentiary protection afforded by the statute.  We review *de novo* questions of statutory interpretation.  <u>In re Charter Communications, Inc., Subpoena Enforcement Matter</u>, 393 F.3d 771, 775 (8th Cir. 2005).

We decline to so extend the statutory language.  Section 20903 limits the evidentiary privilege to "accident or incident report[s] filed by a railroad carrier" under section 20901.  We agree with the district court that the plain language of the statute does not support the assertion that BNSF's "Alternate to FRA F6180.98" is privileged.  Although FRA regulations indicate that FRA F6180.98 or an alternative "shall be used" by railroads to record reportable injuries, the regulations do not require it to be filed.  49 C.F.R. § 225.21(h) (1999); <u>see also</u> 49 C.F.R. § 225.25.  In fact, the regulations state that the form must be made available to the injured employee upon request.  49 C.F.R. § 225.25(c).  That the information in such materials is damaging to BNSF is irrelevant to the statutory meaning.  Only Congress may expand the current narrow statutory privilege.  The district court did not err in admitting the report.

The judgment is affirmed.

_____