BARBARA ROTMAN vs. NATIONAL RAILROAD PASSENGER
CORPORATION.

No. 95-P-277.

Norfolk. June 6, 1996. - September 18, 1996.

Present: WARNER, C.J., ARMSTRONG, & KASS, JJ.

*Evidence,* Expert opinion, Scientific test. *Negligence,* Railroad.

At the trial of the issue of damages in a personal injury case, the judge cor-
rectly excluded as evidence the plaintiff's medical expert's opinion that
the trauma had exacerbated the plaintiff's preexisting optic neuritis,
where the plaintiff presented no evidence that the theory underlying the
expert's opinion was generally accepted or had scientific validity. [318-320]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 11, 1992.

A motion in limine to preclude expert testimony was heard
by *Richard G. Stearns,* J.

*Robert W. Carlson* for the plaintiff.

*Paul M. Moretti* for the defendant.

WARNER, C.J. On December 12, 1990, the plaintiff was a
passenger on a Massachusetts Bay Transit Authority com-
muter train which was struck by a passenger train operated
by the National Railroad Passenger Corporation (Amtrak)
that failed to brake while entering Back Bay station in Bos-
ton. Amtrak conceded liability for the accident. At trial, the
only remaining issue was damages.

The plaintiff alleged that the impact from the crash threw
her forward in her seat, causing her to strike her head. She
claimed that this trauma caused an attack of optic neuritis, a
form of acute transitory blindness. Prior to the accident, the
plaintiff, diagnosed with multiple sclerosis (MS), had suffered
attacks of optic neuritis, a symptom not uncommon to MS
patients. The most recent attack was eight months before the
accident. These attacks were unrelated to any trauma.

The plaintiff sought to have Dr. Shirley Wray, a board certified neurologist and Harvard Medical School professor, testify to establish the necessary link between the trauma and the onset of her symptoms. The defendant, while stipulating to the expertise of Dr. Wray, brought a motion in limine to exclude her testimony. Both parties framed the admissibility of Dr. Wray's opinion under Proposed Mass.R.Evid. 702, which mirrors Fed.R.Evid. 702. That rule states, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

During voir dire examination, on October 25, 1993, Dr. Wray testified that it was her opinion that trauma exacerbated the plaintiff's preexisting optic neuritis. This opinion was based on her observation of patients over a period of years and on the temporal coincidence between the crash and the plaintiff's vision loss. In support of her opinion, Dr. Wray identified a medical treatise which noted that some patients with MS experience exacerbated symptoms of optic neuritis following trauma. Dr. Wray conceded, however, that currently there was no scientific evidence, such as autopsy data, to confirm the causal relationship between trauma and optic neuritis or to identify patients, such as the plaintiff, in whom such a causal relationship existed. Dr. Wray had used magnetic resonance imaging (MRI) technology to show the effect of trauma in some patients, but not in the plaintiff, and stated that future advances in MRI technology would be necessary to validate her hypothesis.

In a written decision, the judge allowed the defendant's motion to exclude Dr. Wray's expert opinion. We affirm. The judge found that Dr. Wray's opinion did not constitute scientific knowledge as there was no way to validate it. The judge reasoned that absent this validation, Dr. Wray's opinion would not assist the jury. In addition, the judge concluded that Dr. Wray's opinion would not be helpful to the jury as they would have no way to connect Dr. Wray's opinion to the plaintiff's case because she could not identify in which patients trauma would exacerbate optic neuritis. The plaintiff subsequently agreed to a judgment against Amtrak in the amount of $15,000, but reserved her right to appeal the

judge's allowance of the motion to exclude Dr. Wray's testimony.

At the time of the voir dire hearing, Massachusetts courts employed the test outlined in *Frye* v. *United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), and admitted scientific expert testimony only after determining that the community of scientists involved generally accepted the theory or process. See *Commonwealth* v. *Lanigan*, 419 Mass. 15, 24 (1994). The Supreme Court, in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), relying on Fed.R.Evid. 702, had already replaced the *Frye* test with a more flexible inquiry into whether the scientific evidence was reliable. See *Commonwealth* v. *Lanigan*, 419 Mass. at 25. In *Commonwealth* v. *Lanigan*, the Supreme Judicial Court accepted the reasoning of *Daubert* and held that reliability was the ultimate test of admissibility. *Id*. at 24-26.

To determine reliability, a judge must act as a "gatekeeper" and exercise discretion in ruling on any challenge to the validity of the process or theory underlying an expert opinion. *Commonwealth* v. *Lanigan*, 419 Mass. at 26. *Commonwealth* v. *Jones*, 423 Mass. 99, 107 (1996). A judge can assess reliability by applying the *Frye* test ("the significant, and *often the only*, issue" [emphasis added]) to determine whether the community of scientists involved generally accepts the theory or process. *Commonwealth* v. *Lanigan*, 419 Mass. at 26. If general acceptance is not proven, an opinion can still be admitted if "the theory or process is so logically reliable," or if its reliability can be determined by some other pertinent, but not controlling means, such as examining whether the theory or technique can be or has been tested, or if it has been subject to peer review or publication. *Commonwealth* v. *Lanigan*, 419 Mass. at 24-26. "The overarching issue is 'the scientific validity — and thus the evidentiary relevance and reliability — of the principles that underlie a proposed submission.' " *Id*. at 25, quoting from *Daubert*, 509 U.S. at 595. On appeal, we accord great deference to the judge's ruling. *Commonwealth* v. *Ianello*, 401 Mass. 197, 200 (1987).

Here, no evidence was presented that Dr. Wray's opinion was generally accepted or had scientific validity. There was no evidence that findings had been published demonstrating

that trauma exacerbated preexisting optic neuritis.[1] As far as showing reliability through testing, Dr. Wray herself forthrightly indicated that her hypothesis had not been, and currently could not be, tested. Without this type of validating data, her opinion was not reliable and would not have assisted the jury. Dr. Wray's testimony that there was no known way to identify the patients in whom trauma exacerbated optic neuritis further diminished the possibility that her opinion would have assisted the jury. See *Berardi* v. *Menicks,* 340 Mass. 396, 402 (1960) ("[w]here the relation of cause and effect between two facts has to be proved, the testimony of an expert that such relation exists or probably exists is sufficient; but the testimony of an expert that such relation is possible, conceivable or reasonable, without more, is not enough"). There was no abuse of discretion.

> *Order dated December 28, 1993, allowing defendant's motion in limine, affirmed.*

---

[1]Dr. Wray's own published work, in fact, indicated the contrary. In a chapter written two years earlier, entitled "Optic Neuritis," Dr. Wray discussed *the plaintiff's case,* and wrote that because there is an extremely high likelihood that a patient with MS will suffer recurrent attacks of optic neuritis, "the crash trauma cannot be a cause [of the exacerbation] in the sense of medical probability."