USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-1134 DAVID D. STEVENS, Plaintiff, Appellee, v. BANGOR AND AROOSTOOK RAILROAD COMPANY, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge] _____________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr and Lynch, Circuit Judges. ______________ ____________________ Jeffrey T. Edwards, with whom Elizabeth J. Wyman and Preti, __________________ __________________ ______ Flaherty, Beliveau & Pachios, Portland, ME, were on brief, for _____________________________ appellant. Robert M. Byrne, Jr., with whom Thornton Early & Naumes, _____________________ _________________________ Boston, MA, and Craig J. Rancourt, Biddeford, ME, were on brief, _________________ for appellee. ____________________ October 9, 1996 ____________________ LYNCH, Circuit Judge. David Stevens, a railway LYNCH, Circuit Judge. ______________ trackman with sixteen years of service at the Bangor & Aroostook Railroad Company, suffered back injuries from an accident on the job. The jury in his Federal Employers' Liability Act action awarded him $450,000.1 The Railroad appeals from the verdict and the denial of its motion for a new trial, saying the evidence showed neither negligence nor foreseeability and that certain evidentiary rulings were in error. The Railroad raises two issues of weight. It argues it was unfairly prejudiced by the exclusion of evidence of a cardiac event suffered by plaintiff two weeks before trial. It also argues that the court erred in instructing the jury that, while defendant was responsible only for the aggravation of a pre-existing condition, the jury must find for plaintiff if it could not separate the injury caused by the condition from that caused by the accident. These health-related issues require us to address questions not resolved before now in this Circuit. We affirm, though with some sympathy for the tribulations faced by trial counsel. I.  ____________________ 1. The jury found the Railroad responsible for 90% of Stevens' injuries; Stevens responsible for 10%. -2- 2 The jury could reasonably have believed the facts to be as follows: On a winter morning in northern Maine, February 19, 1994, there was a train derailment on the main line to the Millinocket Yard of the Railroad. The derailment tore up some tracks, which had to be repaired promptly. The Millinocket Yard is an important junction point, and the oil tank cars that fuel the local industry travel along its main line. David Stevens, a trackman and machine operator, arrived at the yard around 7 a.m. at the request of his foreman. Stevens' job involved heavy manual labor, and that morning he helped repair the consequences of the derailment. After clearing away torn rail and scrap metal, Stevens and a co-worker, David Ireland, were asked to get lengths of rail to repair the damaged track. The rail was kept in the X-198 railcar, known as the "wreck car." Different weights of thirty-nine foot lengths of rail were piled in the car,2 some lying on their sides, some on their bases. The rails were in disarray, piled to a height of about two to three feet above the base of the car. Their surface was uneven and there were  ____________________ 2. The "weight" of a rail is the weight in pounds of a three foot section. This car had varying lengths of 100 pound, 112 pound, and 115 pound rail, each of which has a somewhat different shape and size. -3- 3 irregular gaps between the pieces of rail. In violation of the Railroad's own safety rules, the wreck car had been loaded using inappropriate equipment and had not been blocked, thus leading to the gaps between the rails. Stevens' task was to climb onto the rails in the wreck car and position the rails so that his co-worker, Ireland, operating a machine called a pettibone, could secure the rail with the pettibone's tongs. Stevens first shoveled snow and ice off the portion of the wreck car where he needed to work. The two men then successfully offloaded six rails, with Ireland operating the pettibone in response to Stevens' hand signals. Then Stevens, standing atop the rails in the wreck car, reached up for the tongs of the pettibone to guide it down to the seventh rail. He slipped and fell. His right leg, up to his groin, went down a gap in the rails. He twisted as he fell and felt a sharp pain in his back. With difficulty and great pain, he extricated himself. Declining co-workers' offers to take him to the hospital and wanting to earn the $20 an hour overtime pay, Stevens continued working for eighteen more hours. When he went home, the pain continued, as it did when he returned to work on February 25, 1994. On February 28, unable to continue working due to the pain, he went to the hospital. He was first diagnosed with lumbar strain, but when physical therapy did not improve his condition, his -4- 4 orthopedic surgeon ordered an MRI, which showed early degenerative disk disease and some narrowing of the disks. He has since been in physical and occupational therapy, unable to return to his job because his back pain disables him from physical labor. Jobs in his area of Maine are few and far between, particularly once employment requiring heavy manual labor is excluded. Stevens, who is married and has children, works sporadically as an animal control officer at about $75 a week and earns small sums as the owner of a delivery truck. Before Stevens' accident, the Railroad had at times loaded the rails onto transport cars in a regular tiered fashion. The Railroad had decided even before the accident to switch to this system for the wreck car because it would be more efficient. It would also be safer because it would be easier for the pettibone operator to grab the rails and so reduce the need for a trackman to climb onto the rails to guide the pettibone's tongs. II. Sufficiency of the Evidence and New Trial Motion ________________________________________________ The Federal Employers' Liability Act was enacted in 1908 to provide railroad workers with a federal remedy for personal injuries suffered as a result of the negligence of their employers or fellow workers. Consolidated Rail Corp. _______________________ v. Gottshall, 114 S. Ct. 2396, 2404 (1994); Robert v. _________ ______ -5- 5 Consolidated Rail Corp., 832 F.2d 3, 5-6 (1st Cir. 1987) _________________________ (citing Atchison T. & S.F. R.R. v. Buell, 480 U.S. 557, 561 ________________________ _____ (1987)). FELA is a broad remedial statute and has been liberally construed to effectuate the congressional intent of protecting railroad employees. Id. (citing Sinkler v. ___ _______ Missouri Pac. R.R., 356 U.S. 326, 330 (1958)). The standard ___________________ for liability under FELA is low, although the statute does not impose absolute liability on employers. Moody v. Boston _____ ______ & Maine Corp., 921 F.2d 1, 3 (1st Cir. 1990). _____________ A FELA plaintiff must prove the traditional common law elements of negligence -- duty, breach, damages, causation, and foreseeability. Robert, 832 F.2d at 6. ______ Specifically, he must show that his employer breached its duty to maintain a safe workplace, that he was harmed by that breach, and that the harm was foreseeable. The employer's duty to maintain a safe workplace does not require all dangers to be eradicated, but it does demand the elimination of those that can reasonably be avoided in light of the normal requirements of the job. Conway v. Consolidated Rail ______ _________________ Corp., 720 F.2d 221, 223 (1st Cir. 1983), cert. denied, 466 _____ _____________ U.S. 937 (1984). FELA provides that railroad employers are liable for injuries to their employees "resulting in whole or __ in part" from the employer's negligence. 45 U.S.C. 51 ________ (emphasis added); see also Robert, 832 F.2d at 6 ("[U]nder ___ ____ ______ -6- 6 FELA negligent employers cannot escape liability merely because other causes contribute to the injury.").  Measured against these standards, the evidence was sufficient to impose liability. The Railroad argues that there was no negligence on its part causing Stevens to slip and no way for it to foresee that Stevens would be injured. Neither the challenge to the sufficiency of the evidence nor the appeal from the denial of the new trial motion is well taken. Stevens was injured when he fell into a gap between the rails created by their haphazard arrangement in the wreck car. The disarray also increased the number of times the trackman had to climb atop the rails in the wreck car to help the pettibone operator, thus making it more likely a worker would fall and slip into a gap between the rails. Although Stevens had cleared away the ice and snow from the area where he was working, it was certainly foreseeable that, given the uncertain footing underneath, a trackman would fall. It was also foreseeable that on falling, he would slip into a gap and be injured or suffer greater injuries than he otherwise would have. Stevens has proffered more than enough to meet his burden. Subsequent Remedial Measures ____________________________ The Railroad claims that two items of evidence -- a post-accident photograph of a wreck car whose rails are -7- 7 arranged in a tiered fashion, and references to comments made at a company safety meeting following the accident -- were admitted into evidence in violation of Fed. R. Evid. 407, which prohibits the introduction of a defendant's subsequent remedial measures. We doubt that Rule 407 applies at all here. As to the photograph showing a car with the rails arranged in tiers,3 the jury was told only that it depicted an arrangement of the type Stevens had seen on other cars on which he had worked before his accident. The jury was not informed of the date of the photograph and was not told that it portrayed a subsequent remedial measure. The photograph was properly admitted to show the Railroad's past practice and standard of care. The jury also did not know that the challenged references to statements by Mr. Cote, the Railroad's roadmaster, concerned statements made during a post-accident safety meeting. The references to Cote's statements were supported by notes taken by one of the Railroad's foremen, Thomas Bell.4 The jury never saw the notes, and the  ____________________ 3. The photograph was a fair representation of rails aligned in a row, same sides up, which Stevens had walked on in other cars prior to the accident. It showed a different, less dangerous alignment than the alignment in the wreck car on which he was injured. 4. The notes said that, "Rails still coming in from Derby on supply cars a mess rails every which way and Holes in the floor of car . . . . RNC [Robert N. Cote] mentioned [time of -8- 8 references to Cote's statements were admitted for impeachment purposes only. Cote had testified that he had never stated the rails on the wreck car were in disarray at the time of the plaintiff's accident and that he remembered the rails as having been arranged neatly. His later statement about the condition of the rails at the time of the accident could be understood to be to the contrary and was thus fair game. Thus, because the evidence was not presented to the jury directly or by inference as subsequent remedial measures, Rule 407 does not apply. Even if Rule 407 applied, the exception within the rule would also apply: This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment. This evidence fell within the exception. These two rulings fell well within the sound discretion of the trial judge. See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1158 (1st ___ ________ ____________________ Cir. 1996); Roy v. Star Chopper Co., 584 F.2d 1124, 1134 (1st ___ ________________ Cir. 1978), cert. denied, 440 U.S. 916 (1979). ____________ Cardiac Event _____________ Two weeks before trial and two and a half weeks after the jury was impanelled, Stevens was hospitalized on November 11, 1995. Stevens was diagnosed with a threatened  ____________________ Stevens' accident] as an example." -9- 9 anterior septal myocardial infarction5 and was released on November 14, 1995. The parties agreed that the cardiac event was not caused in any way by Stevens' accident or consequent injuries. The Railroad was not permitted to cross-examine Stevens about his cardiac event or to introduce the medical records into evidence. The Railroad argued that such examination was pertinent to Stevens' life and work expectancy. The court excluded all evidence about the cardiac event because the Railroad failed to proffer expert testimony to link it to life expectancy or work expectancy. Absent such testimony the court felt that the evidence would have been speculative and unduly prejudicial. The trial court also excluded the evidence in part based on its understanding "that any independent event that the defendant is not responsible for in reference to his health and condition could not be considered by [the jury] for purposes of awarding damages." This latter basis for the trial court's ruling was erroneous. If post-accident health problems have an impact on a plaintiff's ability to work or on his life expectancy and arise independently of the accident, defendant is entitled to adduce evidence of such problems in an effort to  ____________________ 5. An impending heart attack was averted by treatment at the hospital. -10- 10 reduce a potential damages award. In FELA cases plaintiff must prove pre-injury and post-injury earning potential. Quinones-Pacheco v. American Airlines, 979 F.2d 1, 6-7 (1st ________________ _________________ Cir. 1992). As the Sixth Circuit held in a FELA case, Harris ______ v. Illinois Cent. R.R., 58 F.3d 1140 (6th Cir. 1995): ___________________ If [plaintiff] had died in 1992 of a heart attack unrelated to his fall at work, the period for which his estate could recover lost earnings would have been cut off at the point of death. See ___ Dixon v. International Harvester Co., 754 ____________________________________ F.2d 573, 588-90 (5th Cir. 1985). If his heart condition would have rendered him incapable of working as a carman, similarly, we think it would be error to allow testimony on his potential earnings as a carman beyond the point at which his work as a carman would have had to cease even if he had never injured his leg and back. Id. at 1144-45; accord Agosto v. Trusswal Sys. Corp., 142 ___ ______ ______ ____________________ F.R.D. 118, 120 (E.D. Pa. 1992); Smith v. Southland Corp., _____ _______________ 738 F. Supp. 923, 926 (E.D. Pa. 1990). That does not mean the trial judge erred in excluding the evidence, particularly in light of his alternative grounds for doing so. A decision to exclude evidence is reviewed for abuse of discretion. Blinzler, 81 ________ F.3d at 1158. Here, the Railroad commendably concedes that in the ordinary course, evidence of unrelated post-accident health problems without medical testimony as to their effect on plaintiff's life and work expectancy would be unduly speculative. See, e.g., Meller v. Heil Co., 745 F.2d 1297, _________ ______ ________ -11- 11 1303 (10th Cir.) (excluding evidence of the decedent's drug use in a wrongful death action in part due to the absence of a medical foundation for the defendant's claim that the decedent's life expectancy would have been diminished by his drug use), cert. denied, 467 U.S. 1206 (1984). The Railroad ____________ says that it did not have enough time to develop such testimony, that the court denied its motion for a continuance,6 and that the exclusion was therefore error. Although close, we find no abuse of discretion in light of three factors. First, the timing, while difficult, was far from impossible. The Railroad acknowledges that it received notification of the plaintiff's myocardial event at least ten days before the trial was scheduled to begin. Nothing prevented the defendant from starting to look for an expert witness at that time. The Railroad was promptly given the medical records, and it interviewed the attending physician. The defendant did not begin to put on its case until December 4, effectively giving it over two weeks (albeit subject to the Thanksgiving holiday weekend), to locate an expert witness.  ____________________ 6. The Railroad's request for a continuance was based on its representation that it needed to investigate the issue further. The court denied the continuance based on that representation and directed plaintiff's counsel to give the defense all the medical information it had. The hospital records were promptly provided. No specific request was made for a continuance in order to locate an expert witness. -12- 12 Second, there is very little evidence establishing prejudice to the Railroad. There was no offer of proof as to what a potential cardiologist expert witness would say to link the cardiac event causally to the legal issues. We are left not knowing whether there is, in fact, any colorable claim of linkage. There is not even a clear record of when the Railroad first received the hospital records or what steps it took in response, although at oral argument both counsel attempted to recreate the sequence from memory. Third, during the trial, well after it received notice of the plaintiff's cardiac event, the Railroad entered into a stipulation based on mortality tables as to the life and work expectancy of a typical man of plaintiff's age who was of average health. The jury was instructed that it could consider the stipulation along with other evidence. In the face of the stipulation and the absence of even a proffer to link the cardiac event to plaintiff's life and work expectancy, it was hardly an abuse of discretion for the court to exclude the evidence. Vocational Testimony ____________________ Similarly, we reject the challenge to the testimony of plaintiff's vocational expert. The Railroad says the testimony lacked adequate factual basis and complains that it was sandbagged when, on cross-examination, it learned for the first time that the expert had updated her research just -13- 13 before and during the trial in violation of a pre-trial scheduling order (and, although not mentioned by the defendant, of Fed. R. Civ. P. 26(e)(1) as well). A trial court has wide discretion in determining the admissibility of expert testimony, and we will reverse its decision only when there has been a clear abuse of discretion. Allied Int'l, _____________ Inc. v. International Longshoreman's Ass'n., 814 F.2d 32, 40 ____ ____________________________________ (1st Cir.), cert. denied, 484 U.S. 820 (1987). ____________ The expert's vocational evaluation report was based on her review of the plaintiff's medical records and prior work experience, a meeting with the plaintiff during which they discussed his skills and interests, and her review of jobs available in the area. The expert testified that the information she relied upon was the sort typically used by persons in her field. The Railroad made no proffer that vocational experts rely on different types of information than did plaintiff's expert. We think the foundation laid was adequate. As to the expert's last minute research and the lack of notice to the Railroad, this is a trial management issue within the trial court's discretion. The trial judge recognized that the expert adhered to the same opinions which had been timely disclosed to the Railroad. The court quite properly offered to instruct the jury that it should disregard any information the expert acquired after -14- 14 submitting her report. The Railroad did not take the trial court up on this offer and did not ask for additional time before continuing cross-examination. There was no abuse in the ruling that the violation of the pre-trial scheduling order did not warrant striking the expert's entire testimony. Jury Instructions _________________ The Railroad's final claim is that the trial court improperly instructed the jury on the issue of damages and that this was sufficiently prejudicial, based on the record as a whole, to warrant a reversal of the judgment. The question, one of first impression for this court, is which side should prevail on this issue in a FELA action when there is adequate expert testimony that an accident aggravated a pre-existing condition7 but the jury cannot separate the pain or disability caused by the pre-existing condition from that resulting from the accident. We believe that the balance tips in favor of compensating the FELA plaintiff, and so uphold the jury instructions. Ample evidence was presented at trial that Stevens suffered from degenerative disk disease prior to his February 1994 accident. There was also testimony that degenerative  ____________________ 7. This case does not involve the problem of the admissibility of the expert's testimony if the expert is unable to ascertain whether the trauma of the accident would exacerbate a prior condition of this particular patient. Cf. ___ Rotman v. National R.R. Passenger Corp., No. 95-P-277, 1996 ______ _____________________________ W.L. 528878 (Mass. App. Ct. Sept. 18, 1996). -15- 15 disk disease is a process of aging. However, Stevens presented expert testimony that the accident caused an aggravation of his pre-existing condition. His treating physician testified that, while "there must have been some degenerative disk disease present" before the accident, "it was silent[,] [s]o he did not feel anything," and that the accident caused him to feel the condition for the first time. There was also evidence, however, that plaintiff had experienced back pain prior to the accident. The trial judge instructed the jury as follows: There is evidence in this case that plaintiff had a pre-existing injury or condition which existed prior to February 19, 1994. The railroad is only liable for damages you find to be caused by the occurrence of February 19, 1994. If you find that plaintiff's pre-existing condition made him more susceptible to injury than a person in good health, the defendant is responsible for all injuries suffered by the plaintiff as a result of the defendant's negligence, even if those injuries are greater than would have been suffered by a person in good health under the same circumstances. If you find that defendant negligently caused further injury or aggravation to plaintiff's pre-existing condition, plaintiff is entitled to compensation for all of plaintiff's damages caused by the incident, including that further injury or aggravation. If you cannot separate the pain or disability caused by the pre-existing condition from that caused by the occurrence of February 19, 1994, then the defendant is liable for all of plaintiff's injuries. -16- 16 The defendant takes issue with the last sentence. However, the instructions correctly stated the law. It is true that as a general matter, when a defendant's negligence aggravates a plaintiff's pre-existing health condition, the defendant is liable only for the additional increment caused by the negligence and not for the pain and impairment that the plaintiff would have suffered even if the accident had never occurred. See, e.g., Evans v. _________ _____ United Arab Shipping Co., 790 F. Supp. 516, 519 (D.N.J. __________________________ 1992), aff'd, 4 F.3d 207 (3d Cir. 1993); cf. Shupe v. New _____ ___ _____ ___ York Cent. Sys., 339 F.2d 998, 1000 (7th Cir.), cert. denied, _______________ ____________ 381 U.S. 937 (1965). Contrary to the defendant's premise, the jury was so instructed here. But that general statement of law does not provide a complete response to the question of which party prevails when the harm due to the pre-existing condition is inseparable from the harm due to the accident. We turn first to the language of the FELA, which tends to favor the plaintiff but which is not dispositive. Section 1 of FELA states: "[Defendant] shall be liable in damages . . . resulting in whole or in part from the ____________ negligence of [defendant, its agents, or employees]." 45 U.S.C. 51 (emphasis added). This language suggests, as the jury instruction indicated, that once the plaintiff puts forth credible evidence of causation -- that the Railroad's negligence has aggravated a pre-existing condition -- the -17- 17 defendant will be liable for damages even if the jury cannot separate the amount of harm caused by the accident from the amount of harm caused by the pre-existing condition. However, the statutory language does not provide explicit instructions about the appropriate apportionment of damages when the causes of plaintiff's disability are inseparable. More helpful is a consideration of the primary statutory purpose: "to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases." Atchison T. & S.F. R.R. v. Buell, 480 ________________________ _____ U.S. 557, 561 (1987). "Specifically, the statute abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; a 1939 amendment abolished the assumption of risk defense." Gottshall, 114 S. _________ Ct. at 2404. Allowing a defendant to escape liability because of the jury's inability to separate the disability due to plaintiff's pre-existing condition from that due to the accident would prevent the plaintiff from recovering damages for the aggravation in what the factfinder has determined to be a meritorious case. This would defeat the remedial purpose of the statute.8  ____________________ 8. Indeed, FELA and other federal statutes incorporate the "eggshell skull" rule to prevent defendant from avoiding liability in certain cases. See, e.g., Jordan v. Atchison, _________ ______ _________ -18- 18 When the statutory language and purpose are not dispositive, "[t]he third resort of puzzled courts is to policy, principally the policy Congress was seeking to implement in adopting the statute." Wilson v. Bradlees, No. ______ ________ 95-2293, 1996 WL 534913, at *4 (1st Cir. Sept. 25, 1996). While we are aware that FELA interpretation is a matter of federal law, the Act is founded on common law concepts subject to explicit statutory qualifications. Id. It is ___ therefore appropriate to look to the Restatement of Torts for ____________________ guidance on the relevant policy issues, as indeed the Supreme Court and the courts of appeals have done in the past. See, ____ e.g., Gallick v. Baltimore & O. R.R., 372 U.S. 108, 120 ____ _______ _____________________ (1963); Buckley v. Metro-North Commuter R.R., 79 F.3d 1337, _______ _________________________ 1346 (2d Cir. 1996); Lockard v. Missouri Pac. R.R., 894 F.2d _______ __________________ 299, 305 (8th Cir.), cert. denied, 498 U.S. 847 (1990). ____________ The Restatement provides some assistance in its ___________ discussion of apportionment of indivisible damages, explaining:  ____________________ T. & S.F. Ry., 934 F.2d 225, 228-29 (9th Cir. 1991) (FELA ______________ case noting that it is a well-settled principle of tort law that the defendant must take the plaintiff as it finds him); cf. Avitia v. Metropolitan Club of Chicago, 49 F.3d 1219, ___ ______ ______________________________ 1227-28 (7th Cir. 1995) (same under Fair Labor Standards Act); Doty v. Sewall, 908 F.2d 1053, 1059 (1st Cir. 1990) ____ ______ (same under Landrum-Griffin Act). And the principle that indivisible harm results in imposing full liability on defendants is recognized in other areas of federal law as well. See, e.g., Price v. United States Navy, 39 F.3d 1011, _________ _____ __________________ 1018 (9th Cir. 1994) (CERCLA). -19- 19 Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis . . . the courts have refused to make an arbitrary apportionment . . . and each of the causes is charged with responsibility for the entire harm. Restatement (Second) of Torts 433A(2) cmt. i, at 439 _______________________________ (1965). Thus, a defendant gets the benefit of apportionment of harm only if "there is a reasonable basis for determining the contribution of each cause to a single harm." Id.  ___ 433A(1)(b), at 434. If not, the defendant is liable for the whole. According to 433A, both the defendant's negligence and the plaintiff's pre-existing condition are deemed the cause of the entire harm, thus imposing the burden of the whole on both. But this tie is broken by the congressional intent to implement a policy benefitting injured railway workers.9 An additional policy argument that supports upholding the jury instruction may be found in the Restatement's discussion of the related question of who has ___________  ____________________ 9. The illustrations for the above quoted Restatement ___________ comments are primarily taken from cases involving multiple tortfeasors. However, the Restatement indicates that "[s]uch ___________ entire liability is imposed where some of the causes are innocent . . . ." Id. 433A(2) cmt. i, at 439; cf. id. app. ___ ___ ___ at 140 (1966) (noting that "as to an original injury followed by negligent treatment," the treating physician "is liable only for the aggravation he has caused"). The instant case is closely analogous, and the parallel between aggravation of a pre-existing condition and the harm caused by multiple tortfeasors has been drawn by several courts. See, e.g., __________ Lovely v. Allstate Ins. Co., 658 A.2d 1091, 1092 (Me. 1995). ______ _________________ -20- 20 the burden as to apportionment of damages when such an apportionment is possible:10 The reason for the exceptional rule placing the burden of proof as to apportionment upon the defendant or defendants is the injustice of allowing a proved wrongdoer . . . to escape liability . . . . In such a case the defendant may justly be required to assume the burden of producing that evidence, or if he is not able to do so, of bearing the full responsibility. Id. 433B(2) cmt. d, at 444.11 The comment concludes, "As ___ between the proved tortfeasor who has clearly caused some harm, and the entirely innocent plaintiff, any hardship . . . should fall upon the former." Id. ___  ____________________ 10. At trial, defendant asked for a jury instruction indicating that if the causes of plaintiff's injuries were separable, plaintiff had the burden of proof on the extent to which the accident caused the aggravation of the pre-existing condition. Because this case involves an instruction on indivisible injuries, we need not decide the question of who bears the burden as to aggravation of a pre-existing condition when the damages are separable. However, to the extent that the Railroad is contending that plaintiff bears the entire burden of proving damages, we note that this argument is undercut by the statutory scheme, which makes comparative negligence an affirmative defense. But cf. Dale _______ ____ v. Baltimore & O. R.R., 552 A.2d 1037, 1041 (Pa. 1989) (in ____________________ FELA case, it was error to instruct jury that "if it found the railroad negligent, the railroad was responsible for the entirety of damages, whether or not its negligence caused those damages in whole or in part," because implicit in the comparative negligence scheme is the principle that defendant is only liable to the extent that its negligence causes harm, whether the other causes are the employee's own negligence or a pre-existing health condition). 11. The rule placing the burden as to apportionment on the defendant has also been adopted by at least one court interpreting a similar federal statute. Maurer v. United ______ ______ States, 668 F.2d 98, 100 (2d Cir. 1981) (Public Vessels Act). ______ -21- 21 The primary policy argument against shifting the burden of proving apportionment to defendant is that plaintiff is in the better position to prove what portion of his injuries was caused by the accident. LaMoreaux v. Totem _________ _____ Ocean Trailer Express, Inc., 632 P.2d 539, 545 (Alaska 1981). ___________________________ However, given discovery of medical records and the availability of medical examinations of plaintiff by defendant's doctor, Fed. R. Civ. P. 35, it is not unfair to place on defendant that burden and the consequences of not meeting it. We therefore think the better rule, particularly in light of FELA's broad remedial purposes, is that if the factfinder cannot separate injuries caused or exacerbated by the accident from those resulting from a pre-existing condition, the defendant is liable for all such injuries.12 Affirmed.  ____________________ 12. Cf. Varhol v. National R.R. Passenger Corp., 909 F.2d ___ ______ ______________________________ 1557, 1564 (7th Cir. 1990) (upholding use of interrogatories asking jury "to determine what portion of [plaintiff's] condition . . . resulted from the [accident], and, if it _____ could determine that portion, to take it into account in ______________________________ determining damages" (emphasis added)). -22- 22