*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1915**

Donald R. Filler,
Respondent,

vs.

Soo Line Railroad Company
d/b/a Canadian Pacific,
Appellant.

**Filed July 14, 2014
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CV-12-4768

Cortney S. LeNeave, Richard L. Carlson, Hunegs, LeNeave & Kvas, P.A., Wayzata, Minnesota (for respondent)

Diane P. Gerth, Alfonse J. Cocchiarella, Sweeney & Masterson, P.A., St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Kirk, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant challenges the district court's denial of its motion for a new trial, arguing that the district court abused its discretion by giving an eggshell-plaintiff

instruction to the jury, by failing to give an aggravation instruction, and by admitting hearsay evidence that did not fall within a recognized exception. We affirm.

## FACTS

A severe snowstorm struck North Dakota in late October 2010. On October 27, 2010, respondent Donald Filler worked his regular shift at appellant Canadian Pacific's rail yard in Harvey, North Dakota. Filler recalled the conditions that day as windy and rainy, and that the rain turned to ice with temperatures falling below freezing. Overnight, more than eight inches of snow fell. Filler reported to work on October 28, observing that the ground conditions were "terrible" and that the yard had not been salted or sanded. Filler's co-worker, Steve Lesmeister, similarly described the conditions in the yard: "We had just gotten 8, 10 inches, 12 inches of snow, and [it was] icy, muddy." Lesmeister also noted that the yard had not been salted or sanded. Both Filler and Lesmeister recalled that Canadian Pacific provided salt and sand in the yard at one time, but had ceased doing so for several years.

Filler and Lesmeister drove a company truck to an area in the yard where they were assigned to move two train engines. As Filler exited the truck, he placed his left foot on the ground, slipped, hit the doorjamb with his neck and shoulder, and landed on the ground. Filler felt a shooting pain through his arm, elbow, and shoulder. Because of the pain resulting from his accident, Filler sought medical treatment.

Filler later sued Canadian Pacific under the Federal Employers' Liability Act (FELA), 45 U.S.C §§ 51–60 (2010), alleging that Canadian Pacific failed to provide a reasonably safe workplace. At a jury trial, Lesmeister testified that he did not recall

reporting that the yard was slippery and "icy" at the time of Filler's accident, but remembered that "it was rough conditions for walking because it was freezing and slushy and half hard." Filler's counsel offered Lesmeister's transcribed statement, which had been taken six days after the accident, into evidence. Canadian Pacific objected. The district court ruled that the transcribed statement could be utilized to refresh Lesmeister's recollection. Filler's counsel told Lesmeister to look at his statement and then, after his review, again asked Lesmeister to describe the condition of the yard. Canadian Pacific objected again, but the district court did not rule on the objection. Filler's counsel repeated his question. Lesmeister responded, "Extremely icy." Filler's counsel later offered the transcribed statement, which had been utilized repeatedly during Lesmeister's testimony to refresh his recollection, into evidence. Over Canadian Pacific's objection, the district court admitted the transcribed statement.

Dr. William Canham, an orthopedic surgeon who treated Filler for his injuries, testified that he diagnosed Filler's elbow condition as a radial head fracture. And, Dr. Canham operated on Filler's shoulder by taking out the acromioclavicular joint, which, as he explained it, "gives a fair bit of pain relief for people." While Dr. Canham acknowledged that Filler "had some preexisting arthritis of his shoulder" and elbow, he opined that his shoulder surgery was caused in "significant part" by the accident, and that Filler would "probably come to shoulder replacement in five, six years." When asked if Filler had symptoms of arthritis before his accident, Dr. Canham, noting that Filler had arthritis in his hip, feet, and cervical and lumbar spine, responded that he "suspect[ed] [Filler] hurts a lot." But Dr. Canham admitted that he was not aware of any limitations

3

on Filler's activities before the accident due to arthritis. He also reviewed a 2007 medical examination, noted that Filler's elbow joints had full range of motion and no obvious deformities, and determined that Filler "was okay then."

Dr. Canham also examined a radiologist's note. The radiologist opined that Filler's shoulder injury was caused by the accident. Dr. Canham testified that he agrees with the radiologist, but probably not as strongly: "To me, it's more 50-50 [that the injury was caused by the fall] . . . . I'm not sure this guy wasn't arthritic to start with." In Dr. Canham's opinion, Filler is no longer physically able to work for the railroad.

Dr. Gary Wyard, an orthopedic surgeon who examined Filler at the request of Canadian Pacific, testified that he reviewed Filler's medical records and after receiving an oral history from Filler, physically examined him. During the oral history, Filler denied having prior problems or difficulties with his elbow or shoulder, but admitted to having back problems. Dr. Wyard testified that Filler's medical records showed "pre-existing, long standing" arthritis in his elbow and "a long-standing history of arthritis in his right shoulder." Dr. Wyard opined that the surgery was only necessary or reasonable because "he has arthritis in the shoulder. He had pain in the shoulder, . . . but everything that [Dr. Canham] did was for pre-existing condition, nothing related to this accident."

Dr. Wyard testified that the Filler's accident only caused a bruised right elbow and a minor right shoulder sprain or strain. He added, "We know that [Filler] complains of pain around his shoulder, that's all we know. We don't know what the cause of it is. There certainly isn't any medical evidence that he should have any pain or discomfort in his shoulder as a result of this accident." In Dr. Wyard's opinion, "The most likely

4

explanation of the pain in his shoulder is the arthritis that he had which was pre-existing." Dr. Wyard conceded, however, that there was no evidence that Filler complained of pain in or had concerns about his elbow or shoulder before the accident.

At trial, Filler requested that the district court present an eggshell-plaintiff jury instruction. Canadian Pacific objected, and requested an aggravation instruction instead. The district court granted Filler's request for an eggshell-plaintiff instruction, denied Canadian Pacific's request for an aggravation instruction, and provided the jury with several pattern FELA jury instructions, including instructions on causation and damages. In closing arguments, Canadian Pacific argued at length that it was not negligent, that Filler's arthritis was preexisting and not asymptomatic, and that Filler's current and future pain is caused by his preexisting arthritis, rather than the accident.

The jury returned a verdict finding the railroad 75% negligent and Filler 25% contributorily negligent. Reflecting the percentages of fault, the district court awarded Filler $579,375. Canadian Pacific moved for a new trial, for judgment as a matter of law, and for remittitur. The district court denied the motion.

Canadian Pacific appeals.

## D E C I S I O N

This court reviews a district court's decision to grant or deny a new trial under an abuse of discretion standard. *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 892 (Minn. 2010). "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Minn. R. Civ. P. 61.

5

## I.

"The district court has broad discretion in determining jury instructions and we will not reverse in the absence of abuse of discretion." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002). "As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 1348 (1985). "[T]he propriety of jury instructions concerning the measure of damages in an FELA action is an issue of substance determined by federal law." *Id.* (quotation marks omitted). But "the Act is founded on common law concepts subject to explicit statutory qualifications." *Stevens v. Bangor & Aroostook R.R. Co.*, 97 F.3d 594, 602 (1st Cir. 1996). Therefore, it is appropriate to consider common-law developments, so long as they do not conflict with statutory requirements. *Id.*

The district court provided the jury the following eggshell-plaintiff instruction:

> In determining the amount of Plaintiff's actual damages, you cannot reduce the amount of or refuse to award any such damages because of any physical frailties of Plaintiff that may have made him more susceptible to injury, disability or impairment than an average or normal person.

> That Plaintiff may have had some preexisting condition does not shield Defendant from liability. In an action of this sort, a negligent railroad must bear the risk that its liability will be increased by reason of the actual physical condition of the individual toward whom its act is negligent. In other words, a negligent party takes the person he injures as he finds him. A negligent party is not exonerated from liability, nor is its liability lessened, if, by reason of some preexisting condition, the victim is more susceptible to injury. One who has received a personal injury as a result of the negligence of another can recover all damages traceable to the

6

primary negligence, including damages attributable to aggravation of a preexisting condition. Stated another way, when a defendant's negligence causes an injury to the plaintiff, the defendant is liable for the resulting damage to him, even though the plaintiff had a pre-existing condition that made him more susceptible to injury or made the consequences to him more severe.

Canadian Pacific requested the district court to provide the following aggravation instruction instead, but was denied:

There is evidence that plaintiff had a pre-existing disability or medical condition. Defendant is liable only for any damages that you find to be directly caused by the accident.

If you find there was an aggravation of a pre-existing condition, you should determine, if you can, what portion of plaintiff's condition resulted from the aggravation and make allowances in your verdict only for such aggravation. However, if you cannot determine, or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowances in your verdict for the entire condition.

Canadian Pacific contends that the district court abused its discretion by providing the eggshell-plaintiff instruction and, instead, the district court should have provided the aggravation instruction. In its order denying Canadian Pacific's motion for a new trial, the district court explained, "The eggshell plaintiff instruction was more appropriate for the facts of this case than the aggravation instruction."

The eggshell-plaintiff or thin-skull rule is often described as the concept that the "defendant takes the victim as found":

When an actor's tortious conduct causes harm to a person that, because of a preexisting physical or mental condition or other characteristics of the person, is of a greater magnitude

7

or different type than might reasonably be expected, the actor is nevertheless subject to liability for all such harm to the person.

Restatement (Third) of Torts § 31 & cmt. a (2010). The rule "does not make the defendant liable for the plaintiff's preexisting condition itself." Dan B. Dobbs, *The Law of Torts* § 188 (2000). "The thin skull rule merely holds that the defendant is liable for the unforeseeable aggravation of that preexisting condition . . . ." *Id.*

The aggravation instruction is given when a preexisting, symptomatic injury or condition was exacerbated by the accident. *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 578 (Iowa 1997). The defendant is liable for only the "additional injury over and above the consequences which normally would have followed from the preexisting condition absent defendant's negligence." *Schore v. Mueller*, 290 Minn. 186, 189, 186 N.W.2d 699, 701 (1971).

The eggshell-plaintiff and the aggravation theories are not inconsistent with each other or mutually exclusive. *See Rowe v. Munye*, 702 N.W.2d 729, 741 (Minn. 2005) ("We recognize that it is conceivable that a person could have both an injury that involves aggravation of a preexisting injury and an injury that was more severe because the plaintiff was more susceptible to injury."); *Waits*, 572 N.W.2d at 578 ("[W]e can envision situations where the principles embodied in both instructions might apply."). Still, they are distinct concepts:

> Whether the eggshell plaintiff rule applies or the aggravation rule applies depends in the first instance on when the pain or disability for which compensation is sought arose. [Under the aggravation rule,] [w]here the prior condition resulted in pain or disability *before* the second injury, the tortfeasor is liable

> only for the *additional* pain and disability arising after the second injury. With respect to any pain or disability arising *after* the second injury, [under the eggshell-plaintiff rule,] the tortfeasor is fully responsible, even though that pain and disability is greater than the injured person would have suffered in the absence of the prior condition.

*Waits*, 572 N.W.2d at 577–78. *Waits* states that both instructions may be submitted to the jury when there is a factual basis for the jury to believe that "the prior condition has caused some disability or pain that is aggravated by the second injury and at the same time the additional harm resulting from the second injury is greater than it would have been in the absence of the prior injury." *Id.* at 576–78.

### *Eggshell-plaintiff instruction*

The district court did not abuse its discretion by giving an eggshell-plaintiff instruction. Several cases recognize that FELA incorporates the eggshell-plaintiff rule and that it may apply in appropriate cases. *See, e.g.*, *Stevens*, 97 F.3d at 602 n.8 ("Indeed, FELA and other federal statutes incorporate the eggshell skull rule to prevent defendant from avoiding liability in certain cases." (quotation omitted)); *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1372 n.2 (9th Cir. 1987) ("Clearly the eggshell plaintiff rule applies in cases in which the cause and effect of an injury are physical."); *Lancaster v. Norfolk & W. Ry. Co.*, 73 F.2d 807, 822–23 (7th Cir. 1985) (examining eggshell-plaintiff rule); *see also Sauer v. Burlington N. R.R. Co.*, 106 F.3d 1490, 1495 (10th Cir. 1996) ("It is true that a defendant cannot escape liability because a preexisting condition made plaintiff more susceptible to injury."). In *Pierce*, for example, the Ninth Circuit rejected the railroad's argument that it was not liable as a matter of law because the eggshell-plaintiff

9

rule did not apply in a FELA case involving an underlying injury of emotional distress. 823 F.2d at 1372 n.2. The Ninth Circuit reasoned, "The Supreme Court has made it clear that FELA jurisprudence gleans guidance from common law developments. The eggshell-plaintiff rule simply means that a tortfeasor takes his victim as he finds him." *Id.* (citation omitted).

The instruction was appropriately given because there is sufficient evidence to form a factual basis for the instruction. *See Freeman v. Busch*, 349 F.3d 582, 590 (8th Cir. 2003) ("[T]he 'egg-shell plaintiff' instruction should only be submitted if there is sufficient evidence to form a factual basis for the instruction."). Both Drs. Canham and Wyard acknowledged that Filler had arthritis in his elbow and shoulder prior to his accident. But, as both doctors noted, there is no evidence that Filler complained about symptoms of arthritis in his elbow and shoulder or that any pre-existing arthritis in his elbow and shoulder limited his work or recreational activities prior to the accident.

### *Aggravation instruction*

The district court did not abuse its discretion by denying Canadian Pacific's request to provide an aggravation instruction. "It is well established that an instruction should not be given if it lacks evidentiary support." *United States v. Amerson*, 938 F.2d 116, 119 (8th Cir. 1991), *abrogated on other grounds by United States v. Martinez-Salazar*, 582 U.S. 304, 120 S. Ct. 774 (2000). There is no evidence that Filler complained of pain or exhibited symptoms in his elbow or shoulder before the accident, that the pre-existing arthritis was disabling, or that any pre-existing symptoms and

physical disability were aggravated by the accident. So this case is not one in which both instructions should be given.

*Fair and correct statement of applicable law*

Canadian Pacific contends that the eggshell-plaintiff instruction does not reflect prevailing law, arguing that it "allow[s] the jury to conclude that they could award damages for more than those caused by any railroad negligence." We disagree.

"[A] jury instruction may not be attacked successfully by lifting a single sentence or word from its context. Where instructions overall fairly and correctly state the applicable law, appellant is not entitled to a new trial." *Hilligoss*, 649 N.W.2d at 147 (quotation omitted). But "[a]n instruction that is so misleading that it renders incorrect the instruction as a whole will be reversible error." *Id.*

FELA damages may be apportioned among an employer's negligence and other non-work causes. *See Sauer*, 106 F.3d at 1493–95 (determining that the district court did not err by providing an apportionment instruction); *Stevens*, 97 F.3d at 601–03 (examining who has the burden of proving apportionment); *Lancaster*, 773 F.2d at 822–23 (examining whether district court erred by failing to provide an apportionment instruction). Similarly, eggshell-plaintiff damages "must be reduced to reflect the likelihood that he would have been injured anyway, from a nonliable cause, even if the defendant had not injured him." *Lancaster*, 773 F.2d at 822.

The instruction provided to the jury does not explicitly inform that the jury must reduce Filler's damages based on inevitable injuries. But the instruction states that the jury must award "all damages traceable to the primary negligence, including damages

11

attributable to aggravation of a preexisting condition." This informs the jury that damages should be awarded based on the negligence of the railroad, not the pain and suffering Filler would have had due to his arthritis. And the district court provided FELA pattern instructions on causation and damages, which require the jury to award damages incurred "as a direct result of the occurrence mentioned in the evidence" and that there may be multiple causes of injury or damage. Overall, the instructions fairly and correctly state the applicable law.

*Prejudice*

Even if the district court erred in providing the jury instruction, Canadian Pacific is not entitled to a new trial because it fails to establish prejudice. To constitute reversible error, a jury instruction must have had the potential to mislead the jury to the prejudice of the defendant. *Zizow v. Wal-Mart Stores, Inc.*, 568 N.W.2d 549, 551 (Minn. App. 1997).

In *Lancaster*, the Seventh Circuit examined whether the district court erred by refusing to instruct the jury to reduce plaintiff's "damages by the probability that he would have become schizophrenic even if the railroad's supervisors had not misbehaved." 773 F.2d at 822. While "[i]t is desirable in such cases to direct the jury's attention to the issue by a specific instruction," the Seventh Circuit concluded that the failure to do so was not reversible error, reasoning:

> The judge's instruction on damages was sufficiently general to allow (though it did not compel, as it should have done) the jury to adjust damages downward for the probability that something other than tortious misconduct would have triggered Lancaster's latent schizophrenia; for he told the jury

12

simply that they should award Lancaster the damages proximately caused by the alleged wrongdoing if they found the railroad liable. In its closing argument the railroad reminded the jurors of the psychologist's testimony that, had it not been for the alleged wrongdoing, something else in Lancaster's life would have set him off. Lancaster's counsel argued the contrary evidence of his expert witnesses but did not suggest that it would be improper for the jury to apportion damages according to the probability that Lancaster would have gone through the rest of his life without incident if he had not been victimized by the railroad. The jury was thus at least apprised of the issue.

773 F.2d at 823.

Here, the instruction includes the general eggshell-plaintiff theory. The instruction also informs the jury that it should award damages traceable to the negligence. Nothing in the instruction states that Filler may recover damages for inevitable injuries that may have arisen from his preexisting arthritis and are not traceable to the negligence. And the district court provided the jury with the FELA pattern instructions on causation and damages. Moreover, Canadian Pacific presented its theory in closing arguments. And Filler never argued that the jury was required to award damages for future pain and suffering unrelated to the accident. In fact, Filler's counsel told the jury that it had to weigh the testimony of Dr. Canham and Dr. Wyard regarding Filler's pre-existing arthritis as "something . . .to consider" in assessing damages. In sum, any error by the district court in providing the given instruction was not prejudicial.

## II.

Canadian Pacific contends that the district court abused its discretion by admitting Lesmeister's transcribed statement into evidence, arguing that it is hearsay and that no

13

hearsay exception applies. We need not determine whether the district court abused its discretion by admitting the statement because it did not prejudice Canadian Pacific. *See Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (stating that to prevail on appeal, the appellant must show both error and prejudice resulting from it); *Melius v. Melius*, 765 N.W.2d 411, 418 (Minn. App. 2009) (stating that an evidentiary error is not prejudicial unless it might reasonably have influenced the trier of fact and changed the result of the trial).

Evidence other than the transcribed statement supports the jury's decision that Canadian Pacific was negligent. *See In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 93 (Minn. App. 2012) (stating that "evidentiary error is not prejudicial if the record contains other evidence that is sufficient to support the findings"); *GN Danavox, Inc. v. Starkey Labs., Inc.*, 476 N.W.2d 172, 176 (Minn. App. 1991) (concluding that cumulative evidence was not prejudicial). The transcribed statement was utilized extensively to refresh Lesmeister's testimony about the accident and ground conditions. Lesmeister never questioned the validity of his statement and testified repeatedly based upon his refreshed recollection after reviewing the statement. Both Lesmeister and Filler testified regarding the "extremely icy" condition of the yard and the failure of Canadian Pacific to salt or sand the yard during the evening of Filler's accident. And Canadian Pacific does not challenge the transcribed statement's accuracy or reliability. No evidence submitted at trial indicates that Lesmeister's transcribed statement contained errors or that Lesmeister fabricated his report. In sum, there is no reasonable possibility that the jury

14

would have changed its verdict in favor of Canadian Pacific had Lesmeister's transcribed statement had not been admitted as an exhibit.

**Affirmed.**